# EXHIBIT 7

```
 1            UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK
 2
      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 3                                    *
      KRISTINA MIKHAYLOVA,            *
 4                                    *
                   Plaintiff,         *  No. 19-8927
 5                                    *
              vs.                     *
 6                                    *
      BLOOMINGDALE'S, INC.,           *
 7    BLOOMINGDALE'S, INC.            *
      d/b/a/ BLOOMINGDALE'S           *
 8    AND FORTY CARROTS,              *
      BLOOMINGDALE'S, LLC,            *
 9    BLOOMINGDALE'S, LLC,            *
      d/b/a BLOOMINGDALE'S NEW        *
10    YORK, MACY'S, INC.,             *
      MACY'S, INC., d/b/a             *
11    MACY'S OF NEW YORK,             *
      UNITED STOREWORKERS             *
12    RETAIL, WHOLESALE AND           *
      DEPARTMENT STORE UNION          *
13    AFL-CIO LOCAL 3 a/k/a           *
      LOCAL 3 UNITED                  *
14    STOREWORKERS RWDSU/UFCW,        *
      DENNIS DIAZ,                    *
15    individually, CHRISTOHER        *
      CASTELLANI,                     *
16    individually, RICHARD          *
      LAW, individually, and         *
17    BOBBY BOOKER,                   *
      individually,                   *
18                                    *
                   Defendants.        *
19    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

20            WEDNESDAY, NOVEMBER 2, 2022

21        REMOTE oral sworn deposition of

22    COURTNEY COX, commencing on or about 10:00

23    a.m., before Lynda C. Vetter, Court Reporter

24    and Notary Public.

```
 1   APPEARANCES

 2


 3   DEREK SMITH LAW GROUP
     BY: MELISSA MENDOZA, ESQUIRE
 4   One Penn Plaza
     Suite 4905
 5   New York, NY 10119
     212-587-0760
 6   melissa@dereksmithlaw.com

 7                Representing the Plaintiff

 8   MACY'S
     BY: BETTY TIERNEY, ESQUIRE
 9   151 W. 34th Street
     New York, New York 10001
10   212-494-1621
     Betty.tierney@macys.com
11
                 Representing the Defendants
12


13   SCHOEMAN UPDIKE KAUFMAN & GERBER LLP
     BY:  STEVEN GERBER, ESQUIRE
14   551 Fifth Avenue, 12th Floor
     New York, New York 10176
15   212-661-5030
     sgerber@schoeman.com
16
                 Co-Counsel for Defendants
17

18

19

20

21

22

23

24
```

```
 1                       I N D E X

 2


 3      WITNESS: COURTNEY COX

 4


 5


 6      EXAMINATION:                             Page

 7          By Ms. Mendoza                         4

 8


 9      EXHIBITS FOR IDENTIFICATION:
        Number              Description
10      Page

11      Cox 1       BLM000807 document          41

12      Cox 2       BLM000754                   44

13


14              Exhibits attached to transcript

15


16


17


18


19


20


21


22


23


24
```

Deposition of Courtney Cox                           Kristina Mikhaylova v. Bloomingdale's Inc., et al.

Page 4

1      COURTNEY COX,
2      having been duly sworn, was deposed and
3      testified as follows:
4           EXAMINATION
5 BY MS. MENDOZA:
6      Q.      Good morning.  My name is Melissa
7 Mendoza.  I am the attorney for the plaintiff,
8 Kristina Mikhaylova, in this case.  And do you
9 prefer to be called Ms. Cox, Courtney?  What
10 do you prefer?
11     A.      Courtney would be great.
12     Q.      Okay.  All right.  So have you --
13 have you ever been to a deposition before?
14     A.      I have not.
15     Q.      Okay.  So I'm just going to lay
16 some ground rules first before we begin.  Make
17 sure to respond with verbal responses because
18 the court reporter is taking everything that
19 we say down.  So she can't write down, you
20 know, if you are nodding or nonverbal
21 responses.  So just --
22     A.      Sure.
23     Q.      -- make sure you give verbal
24 responses.  And also, just if you wait until I

Page 5

1 am done speaking, and then you can respond so
2 that we aren't speaking over each other.  And
3 I will do the same, again, for the court
4 reporter.  Okay?
5      A.      Yes.
6      Q.      And if you need to take a break at
7 any point, just let me know.  I just ask that
8 you wait until the last question is answered,
9 and then you can take a break.  Okay?
10     A.      Okay.
11     Q.      And you understand that you are
12 under oath today, correct?
13     A.      Yes.
14     Q.      And that means you are sworn to
15 tell the truth, right?
16     A.      Yes.
17     Q.      And is there any reason why -- is
18 there any reason why -- is there any reason
19 that might impair or prevent you from fully or
20 truthfully answering my questions today?
21     A.      No.
22     Q.      Okay.  Do you -- do you suffer from
23 any condition, either mental or physical, that
24 might impair your ability to understand my

Page 6

1 questions?
2      A.      No.
3      Q.      Have you taken any prescription
4 medication or otherwise in the last --
5           - - -
6           (Technical difficulties.)
7           - - -
8      A.      Can you repeat the question?  I'm
9 sorry.
10     Q.      Have you taken any prescription
11 medication or otherwise in the last 24 hours?
12     A.      Yes.
13     Q.      Okay.  What medication are you on?
14     A.      Anxiety and asthma.
15     Q.      Okay.  And there is no reason why
16 that medication would affect your ability to
17 answer my questions truthfully today, correct?
18     A.      Correct.
19     Q.      Okay.  Have you consumed any
20 alcohol in the past 24 hours?
21     A.      No.
22     Q.      Okay.  And do you know why you are
23 here today?
24     A.      Yes.

Page 7

1      Q.      And why is that?
2      A.      To act as a character witness for
3 our company as far as how we utilize our
4 policies and procedures as it pertains to
5 conduct issues.
6      Q.      And what company is that?
7      A.      Bloomingdale's under the umbrella
8 of Macy's, Inc.
9      Q.      When did you start working at
10 Bloomingdale's?
11     A.      I started in July of 2019.
12     Q.      Okay.  So for purposes of this
13 deposition if I am saying Bloomingdale's, is
14 it understood that I am talking about both; is
15 that correct?
16     A.      Yes, yes.  I can, you mean, both
17 Macy's and Bloomingdale's?  I can clarify if
18 there are any differences.  But typically
19 there are not.
20     Q.      And tell me how you prepared for
21 today's deposition.
22     A.      I reviewed our policies and
23 procedures.  I reviewed the training that I go
24 through myself and some of our colleagues go

Page 8

1  through.  And then I also spoke to my previous
2  supervisor, Anita Watkins.
3     Q.    Okay.  And those documents that you
4  reviewed, the policies, have those been
5  produced in this case already?
6     A.    Yes.
7     Q.    Okay.  And do you recall --
8  withdrawn.
9        And so what years would those
10 policies be that you reviewed?
11    A.    The -- it's primarily in our 2015
12 handbook, all of our policies and our code of
13 conduct is included there.
14    Q.    Okay.  So the code of conduct
15 handbook has not been updated since 2015?
16    A.    Not to my knowledge, no.
17    Q.    Okay.  Did you speak with anyone
18 aside from your attorneys about today's
19 deposition?
20    A.    No.
21        MS. TIERNEY:  Objection to form.
22 You can answer.
23    A.    No.
24    Q.    Okay.  Did you speak to any of your

Page 9

1  previous coworkers besides Anita Watkins that
2  you mentioned?
3     A.    No.
4     Q.    Okay.  And where were you born?
5     A.    Lenexa, Kansas.
6     Q.    What state are you a resident of?
7     A.    New Jersey.
8     Q.    Okay.  You state that you have
9  never been to a deposition before.  So have
10 you testified in a case before?
11    A.    No.  I have only -- I have only
12 attended unemployment hearings.
13    Q.    Okay.  And was it for yourself?
14    A.    No, for previous colleagues both
15 from Bloomingdale's and my previous employer.
16    Q.    Have you ever given a statement
17 under oath?
18    A.    In the other preliminary hearings,
19 yes.
20    Q.    Have you ever been a plaintiff in a
21 lawsuit?
22    A.    Not to my knowledge.
23    Q.    Have you ever been a defendant in a
24 lawsuit?

Page 10

1     A.    No.
2     Q.    Okay.  And so your current employer
3  is Bloomingdale's?
4     A.    Correct.
5     Q.    Where did you work before that?
6     A.    I worked for Target.
7     Q.    Okay.  And what was your position
8  at Target?
9     A.    I was there for ten years.  My last
10 three years I was a general manager.
11    Q.    Okay.  And why did you leave
12 Target?
13    A.    I no longer wanted to be a district
14 manager.
15    Q.    Okay.  So it was a promotion?
16        MS. TIERNEY:  Objection to form.
17 You may answer.
18    Q.    Go ahead.
19    A.    No.  I wanted to get back into the
20 field of HR so I left on my own volition from
21 being a store manager.
22    Q.    Okay.  Was Target, the Target that
23 you worked out -- withdrawn.
24        Where did you work for Target?

Page 11

1     A.    In Kansas City, both Missouri and
2  Kansas.
3     Q.    Okay.  Was general manager your
4  starting position at Target?
5     A.    No.  It was not.
6     Q.    What was your starting position?
7     A.    It was executive team leader.  It
8  would be like an associate manager.
9     Q.    Okay.  And then you -- at what
10 point did you become general manager?
11    A.    After seven years.
12    Q.    Okay.  Where did you work before
13 that?
14    A.    Prior was for the Disney Store in
15 Kansas City.
16    Q.    And your position there?
17    A.    I was a key carrier.  I held keys
18 to open and close the store.
19    Q.    Prior to -- withdrawn.
20        Prior to your position at
21 Bloomingdale's, what HR positions did you
22 hold?
23    A.    Within Target, I spent a year and a
24 half as executive team leader for HR.  So HR

Page 12

1 executive in the store.  And then the three
2 years that I held the title of general
3 manager, the HR department reported to me.  So
4 that was an HR function as well.
5     Q.     Okay.  How did you obtain the
6 position at Bloomingdale's?
7     A.     Applied and interviewed.
8     Q.     Okay.  And for what position did
9 you apply for?
10     A.     At the time, it was manager of
11 employee relations.
12     Q.     Okay.  What year was that?
13     A.     It was 2019.
14     Q.     Okay.  Who interviewed you?
15     A.     Anita Watkins.
16     Q.     What her position?
17     A.     I believe it was a senior VP of
18 human resources in the New York trade area.
19     Q.     Okay.  Can you explain what your
20 position entailed as employee relations?
21     A.     Sure.  As of 2019 in employee
22 relations, my main focus was investigate
23 claims of harassment and discrimination in our
24 flagship store in Manhattan.

Page 13

1     Q.     Okay.  And what's the address of
2 the flagship store?
3     A.     1000 Third Avenue, New York, New
4 York.  I believe it's 10022.
5     Q.     So did you work in that location at
6 that location?
7     A.     Yes.
8     Q.     Okay.  So did you investigate the
9 harassment and discrimination claims just at
10 that store or for the whole company?
11     A.     In 2019 just in that store.  In
12 2020, it expanded to our Soho location as
13 well.
14     Q.     Okay.  And is every -- withdrawn.
15         Does every store have -- withdrawn.
16         When you say 'flagship store,' are
17 you talking about Macy's, just to be clear?
18     A.     Bloomingdale's.  It's at 60th
19 Street and Lexington Avenue.
20     Q.     Okay.  And so did you investigate
21 it for Bloomingdale's harassment claims and
22 discrimination for Bloomingdale's and Macy's;
23 is that correct?
24     A.     Only Bloomingdale's.

Page 14

1     Q.     Oh, only Bloomingdale's.  Okay.
2 And did each store have someone in your
3 position investigating as well for those
4 stores?
5     A.     Our flagship store was quite large.
6 That's why it was only me and the other areas
7 that were multiple stores that fed into one
8 individual.
9     Q.     Okay.  And what -- can you describe
10 the process, the investigation process?
11         MS. TIERNEY:  Objection to the
12 form.  You may answer.
13     A.     So if an employee come forwards
14 with a concern, either to a leader or to
15 someone in HR or another individual, it was my
16 responsibility to sit with that individual and
17 understand their concern.  I would take a
18 formal statement.  Then I would investigate
19 the concern based off the information given.
20         So if there were witnesses, I would
21 speak to witnesses.  And then I would speak to
22 the individual who they were complaining about
23 or individuals they were complaining about and
24 then make a decision either to unsubstantiate

Page 15

1 or substantiate the complaint and either
2 follow our disciplinary process or
3 termination.
4     Q.     Okay.  So did you make the ultimate
5 decision as to whether to terminate or what
6 the outcome should be?
7     A.     It depended on the situation or the
8 severity of the situation.  There were times
9 if it was very black and white and a clear
10 violation of our policy, then I may make the
11 decision on my own.  Otherwise, I may partner
12 with our legal counsel or with my boss at the
13 time, Anita Watkins.
14     Q.     Okay.  And is there a policy on the
15 investigation process?
16         MS. TIERNEY:  Objection to the
17 form.  You can answer.
18     A.     Not to my knowledge.  There is
19 training on the investigation process and a
20 policy as far as conduct that was allowed or
21 not within the company.  But nothing that I
22 can think of that was specifically a process.
23     Q.     What kind of training was
24 conducted?

Deposition of Courtney Cox                                    Kristina Mikhaylova v. Bloomingdale's Inc., et al.

Page 16

A.     So we have compliance training that
I went through, including confidentiality,
HIPAA laws, sexual harassment, preventing
sexual harassment.  And then there was an
online training or conducting investigations.
However, the majority of my training was
shadowing the person that was in place prior
to me.  So I shadowed her for multiple months
before taking on investigations on my own.
Q.     Okay.  And were there any written
documents in that training or trainings?
A.     No.
Q.     Okay.  Besides the employee
handbook like you stated, was the plan in the
handbook of code of conduct right or standard
conduct, right?
A.     Correct.
Q.     How does an employee report a
complaint of discrimination or harassment?
MS. TIERNEY:  I will object to
the form.  You can answer.
A.     It would be multiple matters,
either by telling their manager.  They can
come in and inform a member of HR.  We also

Page 17

have an anonymous hotline that they can call
to complain as well.
We are also a unionized environment
so there were times I received complaints from
the union where I investigated in that manner.
But we took and take all complaints seriously.
So even if someone came forward and said so
and so that's something we investigate that as
well.
Q.     Okay.  And are there any policies
on managers reporting harassment or
discrimination?
A.     We inform our managers that if
someone comes forward with a concern even if
they don't use the words harassment or
discrimination.  They should take that
seriously and they are considered on notice
and they should inform someone in HR
immediately.
Q.     And what if an employee doesn't
tell the manager but the manager sees it?  Is
the manager supposed to report it?
A.     Yes.
Q.     Are there any policies that say

Page 18

managers are required to report regardless if
they were told by an employee about harassment
or discrimination?
A.     It would be within our sexual
harassment and discrimination training we are
required to do annually.  However, I don't
recall it being in an actual policy.
MS. MENDOZA:  Okay.  To the extent
that those documents exist, we will request
those records after the deposition.
Q.     Okay.  So did you document your
investigation into claims of harassment or
discrimination?
A.     Yes.
Q.     And where are those stored?
A.     Everything that I investigated is
stored on physical paper.  So it's locked in
our HR office with the statements individuals
would make and sign and the notes that I would
take and recount that I would do on the actual
investigation itself and the outcome.
Q.     Okay.  Approximately -- so this
is -- we are talking about in 2019, right?
A.     Yes.

Page 19

Q.     Approximately how many --
approximately how many investigations did you
conduct into harassment or discrimination?
MS. TIERNEY:  As of what time
frame?  From then to now?
MS. MENDOZA:  No, that time 2019.
MS. TIERNEY:  Okay.  So just in
2019?
MS. MENDOZA:  Correct.
A.     Since I arrived in July of 2019, I
would say perhaps a dozen.  But I can't say
for sure how many I investigated in 2019.
Q.     Okay.  And in -- did your position
change between July 2019 and now?
A.     Yes.  So my title -- well, I am now
senior manager of employee relations.  My
title has remained the same.  However, my
duties shifted in March of 2022.  And I am now
focused on engagement and culture within our
New York trade area so our three stores in
Manhattan.
Q.     Okay.  So now instead of just being
at the flagship store, you have now expanded
to all three stores, you say?

Page 20

A.   I have expanded to all three stores and I no longer investigate harassment and discrimination.

Q.   Okay.  And was that change in March of 2020, you said, right?

A.   Correct.

Q.   Okay.  So between July 2019 and March of 2020, approximately how many investigations did you conduct for discrimination or harassment?

A.   I'm sorry.  I don't think I can say.  Over one hundred but I'm not confident beyond that.

Q.   Okay.  Were any of those -- withdrawn.

When did you change from employee relations?  What year from what you were doing before March of 2020 to what you are doing now?

A.   We restructured our HR department so there is now a team of individuals that investigate harassment and discrimination under different levels within our company, both within Macy's and Bloomingdale's.  And

Page 21

within the restructure, the company found the need for an individual like myself to focus on culture and engagement and also be a resident expert on policies, procedures and our collective bargaining agreement within our flagship store.

Q.   Okay.  So there is still -- withdrawn.

And what does engagement and culture entail?

A.   I guess for lack of a better term, you are making sure everyone is happy, understanding if they are not, why that is and helping to lead our leaders to do better and make change.  So I do still have individuals come forward with concerns of harassment and discrimination, and I assist them in finding the correct avenue within our company to have that investigated.

Q.   Okay.  So let's -- I'm going to ask you questions about the policies for sexual harassment, discrimination.  And were those policies -- withdrawn.

Are there any policies on

Page 22

retaliation as well?

A.   Yes.

Q.   Okay.  And that's also in the code of conduct?

A.   It is, yes.

Q.   Is it also in the employee handbook?

A.   Yes.  They are together in the code of conduct in the book, yes.

Q.   Okay.  And are there any trainings -- are there any trainings done for regarding sexual harassment, discrimination and retaliation in the workplace?

A.   Yes.

MS. TIERNEY:  Objection to form.  You can answer.  I'm sorry.  Go ahead.

A.   Yes.  There is an annual training that all of our colleagues are required to take about sexual harassment, discrimination and retaliation.

Q.   Okay.  And who makes those trainings?

A.   It is digital so it's an online training.  It is tracked online.  That way we

Page 23

can insure that everyone takes the training.

Q.   An when did that start, those trainings?

A.   As far as it being online or in general, I don't know.  I can't say.

Q.   Are there any policies for making requests for accommodations?

A.   We have -- yes.  We have an accommodation policy.  We allow both medical and religious accommodations that are handled differently.  However, yes.  We have both.

Q.   Where are those located?

A.   I'm not sure if it's in the handbook.  I don't remember off the top of my head.  However, it is all available on our internal website, including the form to request either a medical or religious accommodation.

Q.   Okay.  What about for pregnancy accommodations, any pregnancy-related accommodations?

A.   Any pregnancy-related accommodations would fall under medical.  It would not be separate from a medical

Page 24

accommodation.

Q.    Okay.  So how are employees informed how to make an accommodations request?

A.    Since it's currently done online, it is reviewed within our orientation process. Additionally if a colleague was to come forward to a leader and state they were not able to complete all the essential functions of their job based on a medical reason, then the leader is trained to show them how to open the accommodation as well.

Q.    Okay.  Is there any separate -- withdrawn.

Are there any separate policies for managers as to how to provide accommodations for employees?

MS. TIERNEY:  Objection to form. You may answer.

A.    The managers themselves would not be providing an accommodation.  They would be instructing the colleague to open it and then we have accommodation disability leave management team that would review an

Page 25

accommodation and approve or deny it based off of information provided by the colleague and their medical provider.

Q.    And where is that team that you just stated that provides the accommodation? What department are they in?

A.    They are within our HR department. They are a branch of Macy's.  And they are all over the country, since they work digitally.

Q.    Okay.  Is there any training or policies for managers as to how to -- withdrawn.

If a manager sees that an employee may need an accommodation, medical accommodation or pregnancy-related accommodation, can they suggest that they request an accommodation?

MS. TIERNEY:  Objection to the form.  You may answer.

A.    I would only encourage them doing so if an individual can't perform the full function of their job.  Many times this comes under when someone is held accountable either for about lateness or absence or not being

Page 26

able to complete their requirements.  At that time if the individual discloses they have a medical condition that's preventing them from doing so, then the leader would encourage them to open an accommodation.

Q.    Okay.  But so my question is:  Are there policies or written documentation as to from the company that informs managers as to what you just said, that if there is anything that comes up at that time to talk about accommodation?

A.    The accommodation like requesting accommodation itself would be the, would be required of the employees for them to disclose the information and then open the accommodation itself.  I don't recall anything in the policy about accommodation in regard to leadership.

Q.    Okay.  So would a manager know from the company that they are to suggest the employee talk to the disability or accommodation unit -- withdrawn.

So explain to me how the -- withdrawn.

Page 27

Do you know how the disability and leave department processes accommodation requests?

MS. TIERNEY:  Objection to the form.  You can answer.

A.    I know to an extent.  I worked with the team before it became fully digital.  So essentially the colleague would request the accommodation.  They would ask for doctor documentation in line with HIPAA laws so nothing that would violate the HIPAA policy but something from the doctor stating what it is they need in order to be to work on time or not being late or do the early functions of the job.

It would be reviewed by that team. They would decide if we can make a reasonable accommodation.  If we cannot make a reasonable accommodation -- an example would be we have people that need to sit the whole time but can't actually complete their job by sitting the whole time.  So in lieu of an accommodation, a leave of absence would be recommended.

Page 28

Q.     And is that a company -- is that just a company policy that in lieu of accommodation, a leave of absence is recommended?

A.     It is what I have experienced. I don't know if it is a policy.

Q.     Who makes that determination?

A.     Accommodation disability and leave management team.

Q.     So when you say -- can you explain what you mean by digital, that they are digital.

A.     From my recollection in 2019 if someone came forward and wanted an accommodation, as the employer relations manager they would fill out a form and I would send it to the ADLM team.  Now they can simply log into our internal website and request it on the computer instead of having to put anything on paper.  And it goes directly to them instead of having to go through another individual in the store.  So they technically don't even need the leader to know about it or assist with it unless they need assistance.

Page 29

Q.     Okay.  So those teams are located in the actual store?

A.     No.

Q.     Okay.  Where are they?

A.     Because they mostly work remotely, they are all over the country.

Q.     Okay.  Is the HR department within the store?

MS. TIERNEY:  Objection to form.

A.     At this time I am the only HR representative in the store, as we have experts for different categories like investigating discrimination leave and disability.  So I primarily would direct individuals to the right place or the leader directs me to the right place.  And this is within our change of our structure.  The structure was completely different in 2019 and before.  There were more individuals in HR then.

Q.     Okay.  So when did it change?

A.     Primarily this year, March 2022.

Q.     Okay.  So what you are describing is the 2022 current status?

Page 30

A.     Correct.

Q.     Okay.  So what was it in 2019?

A.     In 2019 we have -- we had multiple HR business partners.  We had a VP of HR that was Anita Watkins.  We had myself as employee relations.  We did have some acquisition managers as well, all within the four walls of the building.

Q.     Okay.  Did it change before that, before 2019?

A.     My understanding is before 2019 there were just more of them.

Q.     Okay.  Do you know the year or years?

A.     No, unfortunately.

Q.     So how -- withdrawn.
       Where are employees' personnel files stored?

A.     Depends on the content of the personnel file.  Like I had mentioned, my investigations are physically on paper and under lock and key in our offices.  Basic files like signing off for our code of conduct, employment records, those are

Page 31

digital.  So we scan them into our imaging system.  They can be accessed by HR digitally.

Q.     Okay.  Who else has access to those files?

A.     HR is the only individual that I am aware of.  In fact, I currently access the paper file but not the digital one anymore.

Q.     Okay.  So you said it's accessed by HR but it's digital or also physical?

MS. TIERNEY:  Objection to form. You can answer.

A.     It's both depending on content.

Q.     Okay.  And what about your disciplinary files?  Where are those located?

A.     Disciplinary would be in our imaging system as well as the digital version.

Q.     Okay.  That's only accessed by HR?

A.     That's correct.

Q.     Be what about -- withdrawn.
       Is there a cloud software that stores employees' information?

MS. TIERNEY:  Objection to the form.  You may answer.

A.     That's a little bit out of my

Case 1:19-cv-08927-GBD-SLC   Document 128-7   Filed 09/20/23   Page 12 of 33

Deposition of Courtney Cox                                   Kristina Mikhaylova v. Bloomingdale's Inc., et al.

Page 32

1  knowledge as far as technology.
2      Q.    Okay.  So -- I guess if when you
3  are doing an investigation, when you were
4  doing your investigation considering
5  complaints of sexual harassment if you were
6  looking at the case of an employee, do you
7  research them on some type of database within
8  the company?
9      A.    Yes.
10     Q.    Okay.  What is that database?
11     A.    It's an -- well, I guess it is a
12 Cloud, Oracle system.  Our -- the manager can
13 see direct reports.  HR can see anyone within
14 the company.  But it's all basic information,
15 hire date or they are located in the store.
16 And I think only HR can access personal
17 information as far as phone number and email.
18     Q.    And what about for instance, if
19 somebody calls in for a complaint of
20 discrimination against that employee, would
21 that be in their file?
22     A.    No.
23          MS. TIERNEY:  Objection to form.
24     Q.    No?

Page 33

1      A.    Correct.  It would not be.
2      Q.    Is that because that's in the
3  physical file?
4      A.    Yes.
5      Q.    Okay.  What about tardiness?  Would
6  that be in the Oracle that you stated?
7          MS. TIERNEY:  Objection to the
8  form.  You can answer.
9      A.    There are different systems.  So we
10 use a Kronos system for time and attendance
11 that keeps track of time punching in and out.
12 And we indicate if an individual was late or
13 absent based off of their schedule any given
14 day.
15     Q.    Okay.  And who has access to that?
16     A.    Any leader is able to access the
17 Kronos system.
18     Q.    Okay.  What about in our
19 investigations -- withdrawn.
20          So you mentioned Oracle and then
21 the Kronos.  Is there anything else or
22 database?
23          MS. TIERNEY:  Objection to the
24 form.

Page 34

1      A.    There is an older system but I
2  believe it was also run by Oracle and data
3  transferred.  So those are our main two in
4  addition to our internal Internet.
5      Q.    Okay.  And when did it change?
6      A.    I believe it was in 2020 we
7  switched to the newer Oracle.
8          MS. TIERNEY:  I am going to
9  object.  I think we are getting outside of the
10 topics of your 30 (b)(6) notice.  I'm not
11 going to stop her from answering because I
12 understand the relevance.  But I do want us
13 to -- I mean, she is produced for the topics 1
14 through 4.  So I just want to raise that
15 objection.  But I do want to try to focus on
16 the topics she was produced for.
17          MS. MENDOZA:  No.  I just want to
18 be clear.  I wanted to know if you are still
19 going from 1 through 4 as far as where there
20 is records so that we can go, so she knows
21 where the information is stored.  That's
22 what -- it's relevant to know where we can
23 request those records from.
24          MS. TIERNEY:  Well, my only

Page 35

1  concern is 1 through 4 talks about in terms of
2  the discrimination, sexual harassment.  There
3  is nothing about time and attendance or any
4  other policies.  It is fully related to those
5  policies.  But like I said, I will give you a
6  little leeway because it's relevant.  But I do
7  think we need to focus on what you actually
8  asked for in your discovery.
9          MS. MENDOZA:  Okay.  Fair enough.
10 BY MS. MENDOZA:
11     Q.    Going back to the storage system.
12 Have there been any complaints of
13 pregnancy-related discrimination?
14          MS. TIERNEY:  Objection to the
15 form.
16     Q.    Withdrawn.
17          Have there been -- have you
18 investigated any complaints into pregnancy
19 discrimination?
20          MS. TIERNEY:  Objection to form.
21     A.    Not to my recollection.
22     Q.    Okay.  So since 2019 to March of
23 '22, you have not investigated a complaint of
24 discrimination based on pregnancy, correct?

Case 1:19-cv-08927-GBD-SLC   Document 128-7   Filed 09/20/23   Page 13 of 33

Deposition of Courtney Cox                    Kristina Mikhaylova v. Bloomingdale's Inc., et al.

Page 36

1   A.      Correct.
2   Q.      And for -- how about for
3   pregnancy-related medical conditions?  Have
4   you investigated a complaint for that?
5   A.      Not within the realm of harassment
6   discrimination, to my recollection.
7   Q.      Okay.  In what realm was it in?
8   A.      Well, I mean, I assisted
9   individuals with accommodation or FMLA or
10  absence within the realm of pregnancy but
11  nothing that has to do with harassment or
12  discrimination.
13  Q.      Okay.  And what about for
14  retaliation or a complaint?  Have you
15  investigated a complaint for retaliation for
16  making a complaint based on pregnancy?
17  A.      No, I have not.
18  Q.      What about -- same question except
19  for a pregnancy-related medical condition?
20  A.      No, I have not.
21  Q.      Okay.  Again, your investigations
22  are only for employees at the New York store,
23  correct?
24  A.      That's correct, except for starting

Page 37

1   in 2020, I included the Soho location as well.
2   Q.      Okay.  And do you investigate all
3   complaints that you receive?
4   A.      Yes.
5   Q.      Okay.  So -- withdrawn.  Do you
6   investigate complaints of harassment or
7   discrimination even if an employee is
8   terminated?
9           MS. TIERNEY:  Object to the form.
10  You may answer.
11  A.      Yes and no.  It depends on what
12  occurs.  I can't say that I have had someone
13  claim harassment and discrimination
14  postemployment.  I have had them -- I have had
15  people claim harassment and discrimination.
16  And I in that type of investigation am
17  investigating separate conduct that said:
18  Well, I'm being harassed or discriminated by
19  XYZ.  I can say as a company we would
20  investigate a claim of harassment and
21  discrimination postemployment if a complaint
22  was going forward.
23  Q.      Okay.  And is that a written
24  policy?

Page 38

1   A.      As far as it being specific to
2   postemployment, not to my recollection.
3   Q.      Okay.  So if you are, if a --
4   withdrawn.
5           For example in an employee is
6   terminated -- withdrawn.
7           If an employee is suspended and
8   they complain of retaliation or discrimination
9   while they are on suspension, will an
10  investigation be conducted based on the
11  company's policies?
12  A.      Yes.
13          MS. TIERNEY:  Objection to form.
14  Q.      Okay.  And if that employee is
15  terminated, does the company inform the
16  employee the outcome of that investigation?
17  A.      Yes.  We will always follow up with
18  the individual based on the outcome of the
19  investigation, yes.
20  Q.      Okay.  And do you also -- does the
21  company inform the union about any
22  investigation determinations?
23          MS. TIERNEY:  Object to the form.
24  You can answer.

Page 39

1   A.      It depends on the outcome.  If
2   something was unsubstantiated, if it resulted
3   in disciplinary action or termination, we
4   would be required to inform the union because
5   the proper procedure for the next step would
6   be the grievance process.
7   Q.      Okay.  At the beginning, at the
8   initial stage of investigations into
9   complaints of sexual harassment and
10  discrimination, do you contact the union?
11  A.      No.  Many times the colleague
12  chooses to do so.  So but I would not until
13  the outcome of the investigation.
14  Q.      Okay.  Is there any written policy
15  for that?
16  A.      Not to my recollection.  I don't
17  think investigations are addressed in the
18  collective bargaining agreement, just our
19  policies and procedures around disciplinary
20  action and termination.
21          MS. MENDOZA:  Just give me a few
22  minutes to look over everything.  But I think
23  we will probably be done fairly soon.  Just
24  give me like five minutes.

Page 40

1    (Recess.)
2    Q.    So is there a record -- withdrawn.
3        So if someone is -- withdrawn.
4        If someone has made a complaint
5  against Employee B for discrimination and an
6  investigation is done on Employee B, that
7  determination or outcome of the investigation
8  for Employee B, is that recorded somewhere in
9  Employee B's file?
10       MS. TIERNEY:  Objection to the
11 form of the question.  You may answer.
12   A.    It would depend on the outcome as
13 far as their physical or digital file.  If
14 the -- if it was unsubstantiated, it would be
15 kept in a file but not on the employee's
16 record.  If disciplinary action or termination
17 was found, then yes.  It would be in their
18 file as to why disciplinary action or
19 termination was recommended.
20   Q.    Okay.  When you -- you mentioned
21 physical.  Do you mean is it handwritten or is
22 it -- yeah.  Is it handwritten?  Is that what
23 you mean?
24   A.    Primarily.  I primarily used

Page 41

1  handwritten when I took notes and when I
2  interacted with individuals because it was
3  less distracting than typing.  However, when I
4  would summarize the events of my
5  investigation, I most likely would type them.
6    Q.    Okay.  And so just going back to my
7  previous question.  Would that initial
8  complaint against Employee B be recorded
9  anywhere?
10   A.    It would remain on file, yes.  Not
11 in the individual's personnel file because it
12 may have been substantiated.  But we would
13 keep a physical file of the complaint, yes.
14   Q.    Okay.  So -- okay.  And I just want
15 to -- this is for purposes of --
16       MS. MENDOZA:  Shane, if we can
17 introduce a sales force document.  This will
18 be marked Exhibit -- Shane, do you have a
19 record of where we did the last deposition
20 exhibit number?
21       THE VIDEOGRAPHER:  Not at this
22 moment.
23       (Cox Exhibit No. 1 was marked for
24 identification.)

Page 42

1        MS. MENDOZA:  Okay.  This is
2  Exhibit 1 unless there is any objection to
3  this.
4    Q.    Okay.  This is marked as
5  Plaintiff's Exhibit 1.  And at the bottom, it
6  says BLM000807.  Do you see that?
7    A.    Yes.
8    Q.    And up at the top, it says:
9  Kristina Mikhaylova, Salesforce - Unlimited
10 Edition.  Do you see that?
11   A.    Yes.
12   Q.    So my question is one:  Did the
13 company use salesforce to record employees'
14 information?
15       MS. TIERNEY:  Objection to the
16 form.  You may answer.
17   A.    Yes, I believe so.  It is a newer
18 system.  I do not have access.
19   Q.    What do you mean by 'newer'?
20   A.    Well, I'm honestly not sure at this
21 time when we started using it.  I know our
22 Macy's investigated and used it.  But as a
23 Bloomingdale's investigator, I did not have
24 access to the system which is why I primarily

Page 43

1  had physical files and my predecessors would
2  have as well.
3    Q.    Okay.  So you -- withdrawn.
4        So at the bottom there you see
5  there that first page, it says Crayco (ph) and
6  Oracle.
7    A.    Yes.
8    Q.    So before you mentioned Oracle as a
9  store system?
10   A.    Correct.
11   Q.    So do you know if Oracle is using
12 the same information as the sales force?
13   A.    I don't know for sure.  I would
14 assume so, yes.  This is the type of
15 information I can see in Oracle.
16   Q.    Okay.  And this is -- and Oracle is
17 the information that only HR has access to?
18 Is that correct?
19       MS. TIERNEY:  Objection to the
20 form.  You may answer.
21   A.    Primarily yes.  Her name and
22 employee number and then the department
23 information would always be accessible by the
24 leader for gender, language preference, email.

Page 44

1  All of that would only be accessible by HR.
2    Q.    So going back to the investigations
3  in the Complaint for sexual harassment.  So
4  just to be clear, it's not stored on sales
5  force, correct?
6          MS. TIERNEY:  Object to the form.
7  You may answer.
8    A.    My understanding is that it is now.
9  However, in the time frame that I conducted
10 investigations and prior, it was not.
11         MS. MENDOZA:  Okay.  We can get off
12 the screen.
13         (Cox Exhibit No. 2 was marked for
14         identification.)
15   Q.    And then next exhibit Exhibit 2.
16 Do you see the document?
17   A.    Yes.
18   Q.    The bottom of the screen it says
19 BLM000754.  Do you see that?
20   A.    Yes.
21   Q.    So have you seen -- withdrawn.
22 This looks like a database of some sort,
23 correct?
24   A.    Yes, it is our older database.  I

Page 45

1  previously assumed was Oracle as well that we
2  transferred everything into the newer system.
3  However, we do still use this system.
4    Q.    Okay.  And what is the name of the
5  system?
6          MS. TIERNEY:  Objection to the
7  form.
8    A.    I'm actually not sure it's because
9  it's so old I don't recall.
10   Q.    Okay.  So based on your response,
11 this system -- withdrawn.  Did you incorporate
12 or input any of your investigation findings or
13 complaints of sexual harassment,
14 discrimination, anything related to that in
15 this system?
16   A.    No, I did not.  I also don't think
17 it's possible but I did not.
18   Q.    Okay.  Why do you say it's not
19 possible?
20   A.    I'm not aware of a way that you
21 could upload documents in the system.  I think
22 it's just filling in the fields that are
23 already there.
24         MS. MENDOZA:  Okay.  We can get off

Page 46

1  the screen.  Thank you.
2    Q.    So you have mentioned you have done
3  many investigations into harassment and
4  discrimination.  Correct?
5    A.    Correct.
6    Q.    And after -- withdrawn.
7          Approximately how many of those
8  were substantiated?
9    A.    I really can't say.  I can say that
10 I have substantiated claims of harassment and
11 discrimination but I don't know the number.
12   Q.    Okay.  And just to be clear, are
13 you the only person that was investigating
14 claims of harassment and discrimination,
15 retaliation at the flagship store in March of
16 2022?
17   A.    Yes.
18   Q.    And after your determination, was
19 there any new policies or trainings
20 implemented?
21         MS. TIERNEY:  Objection to the
22 form.  You may answer.
23   A.    Not to my recollection.
24   Q.    What types of training -- you may

Page 47

1  have mentioned it before but I want to go back
2  to it.  What types of training are there for
3  pregnancy discrimination?
4    A.    I don't recall anything being
5  specific within the realm of pregnancy.  I
6  mentioned before I would categorize that as
7  medical.  So anything that we have in regards
8  to sexual harassment, discrimination,
9  retaliation would fall under that.  But I
10 don't recall anything pregnancy-specific.
11   Q.    Okay.  So can you elaborate as to
12 what that training is?
13         MS. TIERNEY:  Object to the form.
14 You can answer.
15   A.    There is -- it's about 45 to 50
16 minutes long.  It's a combination of
17 information being read to you and video
18 examples.  And the training -- the same for
19 both colleagues and leaders.
20         And then it gives you the option
21 throughout the training to respond to
22 situations in an appropriate manner, lets you
23 know if you are incorrect.  And essentially
24 trains our colleagues a, not to discriminate

Deposition of Courtney Cox                                    Kristina Mikhaylova v. Bloomingdale's Inc., et al.

Page 48

1  or harass one another and what to do it if a
2  situation as such would occur.
3  Q.     Okay.  And you previously mentioned
4  that managers are not -- withdrawn.
5       Are managers synonymous with
6  leaders?
7            MS. TIERNEY:  Object to the form.
8  You can answer.
9  A.     Yes.
10 Q.     Is there anybody else that's
11 considered to be a leader besides managers?
12 A.     No. I would consider the verbiage
13 one in the same.  We have working supervisors
14 in the store.  However, they would be
15 unionized employees and would be considered a
16 peer of a regular colleague.
17 Q.     Okay.  So going back to
18 accommodation requests, you stated that there
19 -- withdrawn.
20      Are there pregnancy-related medical
21 accommodations given at the company?
22           MS. TIERNEY:  Objection to the
23 form.  You can answer.
24 A.     Yes.  I have seen -- it depends on

Page 49

1  what's needed.  Again, it's dictated by what
2  the individual needs.  Sometimes it's sitting
3  the entire day.  That's more difficult to
4  accommodate something compared to like lifting
5  under 5 pounds, something like that.  So I
6  have seen accommodations in regards to a
7  pregnancy-related condition, yes.
8  Q.     But you have not seen any
9  complaints of pregnancy-related accommodation;
10 correct?
11 A.     Correct.
12 Q.     And okay.  And -- withdrawn.
13           MS. MENDOZA:  That's all my
14 questions.  Thank you.
15           MS. TIERNEY:  Madam Court Reporter,
16 we will read, review and sign.  And we will
17 take a copy.
18      (Deposition concluded at 11:16
19 a.m.)
20
21
22
23
24

1                        CERTIFICATION

2

3            I hereby certify that the

4    proceedings, evidence and objections noted are

5    contained fully and accurately in the notes

6    taken by me in the deposition of the foregoing

7    matter and that this is a true and correct

8    transcript of the same.

9

10

11                    LYNDA C. VETTER

12                    STENOGRAPHIC COURT REPORTER

13                    NOTARY PUBLIC

14

15                    (THE FOREGOING CERTIFICATION OF

16   THIS TRANSCRIPT DOES NOT APPLY TO ANY

17   REPRODUCTION OF THE SAME BY ANY MEANS, UNLESS

18   UNDER THE DIRECT CONTROL AND/OR SUPERVISION OF

19   THE CERTIFYING REPORTER.)

20

21

22

23

24

1                    INSTRUCTIONS TO WITNESS

2

3              Please read your deposition over carefully

4    and make any necessary corrections.  You should

5    state the reason in the appropriate space on the

6    errata sheet for any corrections that are made.

7                  After doing so, please sign the errata

8    sheet and date it.

9                  You are signing same subject to the

10   changes you have noted on the errata sheet, which

11   will be attached to your deposition.

12                 It is imperative that you return the

13   original errata sheet to the deposing attorney

14   within thirty (30) days of receipt of the deposition

15   transcript by you.  If you fail to do so, the

16   deposition transcript may be deemed to be accurate

17   and may be used in court.

18

19

20

21

22

23

24

1                              - - -

2                    E R R A T A   S H E E T

3                              - - -

4

5    PAGE        LINE       CHANGE

6    _____     _____    _____

7    _____     _____    _____

8    _____     _____    _____

9    _____     _____    _____

10   _____     _____    _____

11   _____     _____    _____

12   _____     _____    _____

13   _____     _____    _____

14   _____     _____    _____

15   _____     _____    _____

16   _____     _____    _____

17   _____     _____    _____

18   _____     _____    _____

19   _____     _____    _____

20   _____     _____    _____

21   _____     _____    _____

22   _____     _____    _____

23   _____     _____    _____

24   _____     _____    _____

Case 1:19-cv-08927-GBD-SLC   Document 128-7   Filed 09/20/23   Page 20 of 33

Deposition of Courtney Cox                                    Kristina Mikhaylova v. Bloomingdale's Inc., et al.

ACKNOWLEDGMENT OF DEPONENT

     I, _____, do hereby certify
that I have read the foregoing pages and that the
same is a correct transcription of the answers given
by me to the questions therein propounded, except
for the corrections or changes in form or substance,
if any, noted in the attached Errata Sheet.

_____     _____
Date                 Signature

    Subscribed and sworn to before me this \_\_\_\_
day of

_____, 20\_\_.

    My commission expires:_____

_____
Notary Public

Case 1:19-cv-08927-GBD-SLC   Document 128-7   Filed 09/20/23   Page 21 of 33

Deposition of Courtney Cox                                    Kristina Mikhaylova v. Bloomingdale's Inc., et al.

## WORD INDEX

**< 1 >**
**1** 3:*11* 34:*13, 19*
35:*1* 41:*23* 42:*2, 5*
**10:00** 1:*22*
**1000** 13:*3*
**10001** 2:*9*
**10022** 13:*4*
**10119** 2:*5*
**10176** 2:*14*
**11:16** 49:*18*
**12th** 2:*14*
**151** 2:*9*
**19-8927** 1:*4*

**< 2 >**
**2** 1:*20* 3:*12* 44:*13,*
*15*
**20** 53:*19*
**2015** 8:*11, 15*
**2019** 7:*11* 12:*13, 21*
13:*11* 18:*23* 19:*6, 8,*
*10, 12, 14* 20:*7* 28:*13*
29:*18* 30:*2, 3, 10, 11*
35:*22*
**2020** 13:*12* 20:*5, 8,*
*18* 34:*6* 37:*1*
**2022** 1:*20* 19:*18*
29:*22, 24* 46:*16*
**212-494-1621** 2:*10*
**212-587-0760** 2:*5*
**212-661-5030** 2:*15*
**22** 35:*23*
**24** 6:*11, 20*

**< 3 >**
**3** 1:*13*
**30** 34:*10* 51:*14*
**34th** 2:*9*

**< 4 >**
**4** 3:*7* 34:*14, 19* 35:*1*
**41** 3:*11*
**44** 3:*12*
**45** 47:*15*
**4905** 2:*4*

**< 5 >**

**5** 49:*5*
**50** 47:*15*
**551** 2:*14*

**< 6 >**
**60th** 13:*18*

**< A >**
**a.m** 1:*23* 49:*19*
**a/k/a** 1:*13*
**ability** 5:*24* 6:*16*
**able** 24:*9* 26:*1* 33:*16*
**absence** 25:*24* 27:*23*
28:*3* 36:*10*
**absent** 33:*13*
**access** 31:*3, 6* 32:*16*
33:*15, 16* 42:*18, 24*
43:*17*
**accessed** 31:*2, 8, 17*
**accessible** 43:*23* 44:*1*
**accommodate** 49:*4*
**accommodation** 23:*9,*
*18* 24:*1, 12, 21, 23*
25:*1, 5, 14, 15, 16, 17*
26:*5, 11, 12, 13, 16, 17,*
*22* 27:*2, 9, 18, 19, 23*
28:*3, 8, 15* 36:*9*
48:*18* 49:*9*
**accommodations**
23:*7, 10, 20, 21, 23*
24:*3, 16* 48:*21* 49:*6*
**accountable** 25:*23*
**accurate** 51:*16*
**accurately** 50:*5*
**ACKNOWLEDGMEN**
**T** 53:*1*
**acquisition** 30:*6*
**act** 7:*2*
**action** 39:*3, 20*
40:*16, 18*
**actual** 18:*7, 20* 29:*2*
**addition** 34:*4*
**Additionally** 24:*7*
**address** 13:*1*
**addressed** 39:*17*
**ADLM** 28:*17*
**affect** 6:*16*
**AFL-CIO** 1:*13*
**agreement** 21:*5*

*39:18*
**ahead** 10:*18* 22:*16*
**alcohol** 6:*20*
**allow** 23:*9*
**allowed** 15:*20*
**AND/OR** 50:*18*
**Anita** 8:*2* 9:*1* 12:*15*
15:*13* 30:*5*
**annual** 22:*17*
**annually** 18:*6*
**anonymous** 17:*1*
**answer** 6:*17* 8:*22*
10:*17* 14:*12* 15:*17*
16:*21* 22:*16* 24:*19*
25:*19* 27:*5* 31:*11, 23*
33:*8* 37:*10* 38:*24*
40:*11* 42:*16* 43:*20*
44:*7* 46:*22* 47:*14*
48:*8, 23*
**answered** 5:*8*
**answering** 5:*20*
34:*11*
**answers** 53:*5*
**Anxiety** 6:*14*
**anybody** 48:*10*
**anymore** 31:*7*
**APPEARANCES** 2:*1*
**Applied** 12:*7*
**apply** 12:*9* 50:*16*
**appropriate** 47:*22*
51:*5*
**approve** 25:*1*
**Approximately** 18:*22*
19:*1, 2* 20:*8* 46:*7*
**area** 12:*18* 19:*20*
**areas** 14:*6*
**arrived** 19:*10*
**aside** 8:*18*
**asked** 35:*8*
**assist** 21:*17* 28:*24*
**assistance** 28:*24*
**assisted** 36:*8*
**associate** 11:*8*
**assume** 43:*14*
**assumed** 45:*1*
**asthma** 6:*14*
**attached** 3:*14* 51:*11*
53:*8*
**attendance** 33:*10*

*35:3*
**attended** 9:*12*
**attorney** 4:*7* 51:*13*
**attorneys** 8:*18*
**available** 23:*15*
**Avenue** 2:*14* 13:*3,*
*19* 21:*18*
**aware** 31:*6* 45:*20*

**< B >**
**b)(6** 34:*10*
**back** 10:*19* 35:*11*
41:*6* 44:*2* 47:*1*
48:*17*
**bargaining** 21:*5*
39:*18*
**based** 14:*19* 24:*10*
25:*1* 33:*13* 35:*24*
36:*16* 38:*10, 18*
45:*10*
**Basic** 30:*22* 32:*14*
**beginning** 39:*7*
**believe** 12:*17* 13:*4*
34:*2, 6* 42:*17*
**better** 21:*11, 14*
**BETTY** 2:*8*
**Betty.tierney@macys.c**
**om** 2:*10*
**beyond** 20:*13*
**bit** 31:*24*
**black** 15:*9*
**BLM000754** 3:*12*
44:*19*
**BLM000807** 3:*11*
42:*6*
**BLOOMINGDALE'S**
1:*6, 7, 8, 9* 7:*7, 10, 13,*
*17* 9:*15* 10:*3* 11:*21*
12:*6* 13:*18, 21, 22, 24*
14:*1* 20:*24* 42:*23*
**BOBBY** 1:*17*
**book** 22:*9*
**BOOKER** 1:*17*
**born** 9:*4*
**boss** 15:*12*
**bottom** 42:*5* 43:*4*
44:*18*
**branch** 25:*8*
**break** 5:*6, 9*

**B's** 40:9
**building** 30:8
**business** 30:4

**< C >**
**call** 17:1
**called** 4:9
**calls** 32:19
**carefully** 51:3
**carrier** 11:17
**CARROTS** 1:8
**case** 4:8 8:5 9:10
32:6
**CASTELLANI** 1:15
**categories** 29:12
**categorize** 47:6
**CERTIFICATION**
50:1, 15
**certify** 50:3 53:3
**CERTIFYING** 50:19
**change** 19:14 20:4,
16 21:15 29:17, 21
30:9 34:5 52:5
**changes** 51:10 53:7
**character** 7:2
**chooses** 39:12
**CHRISTOHER** 1:15
**City** 11:1, 15
**claim** 37:13, 15, 20
**claims** 12:23 13:9,
21 18:12 46:10, 14
**clarify** 7:17
**clear** 13:17 15:9
34:18 44:4 46:12
**close** 11:18
**cloud** 31:20 32:12
**Co-Counsel** 2:15
**code** 8:12, 14 16:15
22:3, 8 30:23
**colleague** 24:7, 22
25:2 27:8 39:11
48:16
**colleagues** 7:24 9:14
22:18 47:19, 24
**collective** 21:5 39:18
**combination** 47:16
**come** 14:13 16:24
21:16 24:7
**comes** 17:14 25:22

26:10
**commencing** 1:22
**commission** 53:21
**company** 7:3, 6
13:10 15:21 20:23
21:1, 18 26:8, 20
28:1, 2 32:8, 14
37:19 38:15, 21
42:13 48:21
**company's** 38:11
**compared** 49:4
**complain** 17:2 38:8
**complaining** 14:22, 23
**complaint** 15:1
16:19 32:19 35:23
36:4, 14, 15, 16 37:21
40:4 41:8, 13 44:3
**complaints** 17:4, 6
32:5 35:12, 18 37:3,
6 39:9 45:13 49:9
**complete** 24:9 26:1
27:21
**completely** 29:18
**compliance** 16:1
**computer** 28:19
**concern** 14:14, 17, 19
17:14 35:1
**concerns** 21:16
**concluded** 49:18
**condition** 5:23 26:3
36:19 49:7
**conditions** 36:3
**conduct** 7:5 8:13, 14
15:20 16:15, 16 19:3
20:9 22:4, 9 30:24
37:17
**conducted** 15:24
38:10 44:9
**conducting** 16:5
**confident** 20:12
**confidentiality** 16:2
**consider** 48:12
**considered** 17:17
48:11, 15
**considering** 32:4
**consumed** 6:19
**contact** 39:10
**contained** 50:5
**content** 30:19 31:12

**CONTROL** 50:18
**copy** 49:17
**correct** 5:12 6:17, 18
7:15 10:4 13:23
16:17 19:9 20:6
21:18 30:1 31:18
33:1 35:24 36:1, 23,
24 43:10, 18 44:5, 23
46:4, 5 49:10, 11
50:7 53:5
**corrections** 51:4, 6
53:7
**counsel** 15:12
**country** 25:9 29:6
**COURT** 1:1, 23
4:18 5:3 49:15
50:12 51:17
**COURTNEY** 1:22
3:3 4:1, 9, 11
**coworkers** 9:1
**COX** 1:22 3:3, 11,
12 4:1, 9 41:23
44:13
**Crayco** 43:5
**culture** 19:19 21:3,
10
**current** 10:2 29:24
**currently** 24:5 31:6

**< D >**
**d/b/a** 1:7, 9, 10
**data** 34:2
**database** 32:7, 10
33:22 44:22, 24
**date** 32:15 51:8
53:14
**day** 33:14 49:3
53:17
**days** 51:14
**decide** 27:17
**decision** 14:24 15:5,
11
**deemed** 51:16
**defendant** 9:23
**Defendants** 1:18
2:10, 15
**DENNIS** 1:14
**deny** 25:1

**DEPARTMENT** 1:12
12:3 20:20 25:6, 7
27:2 29:7 43:22
**depend** 40:12
**depended** 15:7
**depending** 31:12
**Depends** 30:19
37:11 39:1 48:24
**DEPONENT** 53:1
**deposed** 4:2
**deposing** 51:13
**deposition** 1:21 4:13
7:13, 21 8:19 9:9
18:10 41:19 49:18
50:6 51:3, 11, 14, 16
**DEREK** 2:3
**describe** 14:9
**describing** 29:23
**Description** 3:9
**determination** 28:7
40:7 46:18
**determinations** 38:22
**DIAZ** 1:14
**dictated** 49:1
**differences** 7:18
**different** 20:23
29:12, 18 33:9
**differently** 23:11
**difficult** 49:3
**difficulties** 6:6
**digital** 22:23 27:7
28:11, 12 31:1, 7, 9,
16 40:13
**digitally** 25:9 31:2
**direct** 29:14 32:13
50:18
**directly** 28:20
**directs** 29:16
**disability** 24:23
26:21 27:1 28:8
29:14
**disciplinary** 15:2
31:14, 15 39:3, 19
40:16, 18
**disclose** 26:14
**discloses** 26:2
**discovery** 35:8
**discriminate** 47:24
**discriminated** 37:18

discrimination 12:23
13:9, 22  16:19  17:12,
16  18:3, 5, 13  19:3
20:3, 10, 22  21:17, 22
22:12, 19  29:13
32:20  35:2, 13, 19, 24
36:6, 12  37:7, 13, 15,
21  38:8  39:10  40:5
45:14  46:4, 11, 14
47:3, 8
Disney 11:14
distracting 41:3
DISTRICT 1:1  10:13
doctor 27:9, 12
document 3:11
18:11  41:17  44:16
documentation 26:7
27:10
documents 8:3
16:11  18:9  45:21
doing 20:17, 18
25:20  26:4  32:3, 4
51:7
dozen 19:11
duly 4:2
duties 19:18

< E >
early 27:14
Edition 42:10
either 5:23  14:14, 24
15:1  16:23  23:17
25:23
elaborate 47:11
email 32:17  43:24
employee 12:11, 20,
21  14:13  16:13, 18
17:20  18:2  19:16
20:16  22:6  25:13
26:21  30:5  32:6, 20
37:7  38:5, 7, 14, 16
40:5, 6, 8, 9  41:8
43:22
employees 24:2, 17
26:14  30:17  31:21
36:22  42:13  48:15
employee's 40:15
employer 9:15  10:2
28:15
employment 30:24

encourage 25:20
26:4
engagement 19:19
21:3, 9
entail 21:10
entailed 12:20
entire 49:3
environment 17:3
errata 51:6, 7, 10, 13
53:8
ESQUIRE 2:3, 8, 13
essential 24:9
essentially 27:8
47:23
events 41:4
evidence 50:4
EXAMINATION 3:6
4:4
example 27:19  38:5
examples 47:18
executive 11:7, 24
12:1
Exhibit 41:18, 20, 23
42:2, 5  44:13, 15
EXHIBITS 3:9, 14
exist 18:9
expanded 13:12
19:23  20:1
experienced 28:5
expert 21:4
experts 29:12
expires 53:21
explain 12:19  26:23
28:10
extent 18:8  27:6

< F >
fact 31:6
fail 51:15
Fair 35:9
fairly 39:23
fall 23:23  47:9
far 7:3  15:20  23:4
32:1, 17  34:19  38:1
40:13
fed 14:7
field 10:20
fields 45:22
Fifth 2:14

file 30:20  31:7
32:21  33:3  40:9, 13,
15, 18  41:10, 11, 13
files 30:18, 23  31:4,
14  43:1
fill 28:16
filling 45:22
finding 21:17
findings 45:12
first 4:16  43:5
five 39:24
flagship 12:24  13:2,
16  14:5  19:23  21:6
46:15
Floor 2:14
FMLA 36:9
focus 12:22  21:2
34:15  35:7
focused 19:19
follow 15:2  38:17
follows 4:3
force 41:17  43:12
44:5
foregoing 50:6, 15
53:4
form 8:21  10:16
14:12  15:17  16:21
22:15  23:16  24:18
25:19  27:5  28:16
29:9  31:10, 23  32:23
33:8, 24  35:15, 20
37:9  38:13, 23  40:11
42:16  43:20  44:6
45:7  46:22  47:13
48:7, 23  53:7
formal 14:18
FORTY 1:8
forward 17:7, 14
21:16  24:8  28:14
37:22
forwards 14:13
found 21:1  40:17
four 30:7
frame 19:5  44:9
full 25:21
fully 5:19  27:7  35:4
50:5
function 12:4  25:22
functions 24:9  27:14

< G >
gender 43:24
general 10:10  11:3,
10  12:2  23:5
GERBER 2:13
getting 34:9
give 4:23  35:5
39:21, 24
given 9:16  14:19
33:13  48:21  53:5
gives 47:20
go 7:23, 24  10:18
22:16  28:21  34:20
47:1
goes 28:20
going 4:15  21:20
34:8, 11, 19  35:11
37:22  41:6  44:2
48:17
Good 4:6
great 4:11
grievance 39:6
ground 4:16
GROUP 2:3
guess 21:11  32:2, 11

< H >
half 11:24
handbook 8:12, 15
16:14, 15  22:7  23:14
handled 23:10
handwritten 40:21,
22  41:1
happy 21:12
harass 48:1
harassed 37:18
harassment 12:23
13:9, 21  16:3, 4, 19
17:11, 15  18:2, 5, 12
19:3  20:2, 10, 22
21:16, 22  22:12, 19
32:5  35:2  36:5, 11
37:6, 13, 15, 20  39:9
44:3  45:13  46:3, 10,
14  47:8
head 23:15
hearings 9:12, 18
held 11:17  12:2

helping  21:*14*
HIPAA  16:*3*  27:*10,*
*11*
hire  32:*15*
hold  11:*22*
honestly  42:*20*
hotline  17:*1*
hours  6:*11*, *20*
HR  10:*20*  11:*21*, *24*
12:*3*, *4*  14:*15*  16:*24*
17:*18*  18:*18*  20:*20*
25:*7*  29:*7*, *10*, *19*
30:*4*  31:*2*, *5*, *9*, *17*
32:*13*, *16*  43:*17*  44:*1*
human  12:*18*
hundred  20:*12*

< I >
IDENTIFICATION
3:*9*  41:*24*  44:*14*
imaging  31:*1*, *16*
immediately  17:*19*
impair  5:*19*, *24*
imperative  51:*12*
implemented  46:*20*
included  8:*13*  37:*1*
including  16:2  23:*16*
incorporate  45:*11*
incorrect  47:*23*
indicate  33:*12*
individual  14:*8*, *15*,
*16*, *22*  21:2  25:*21*
26:2  28:22  31:*5*
33:*12*  38:*18*  49:2
individually  1:*15*, *16*,
*17*
individuals  14:*23*
18:*18*  20:*21*  21:*15*
29:*15*, *19*  36:*9*  41:2
individual's  41:*11*
inform  16:*24*  17:*13*,
*18*  38:*15*, *21*  39:*4*
information  14:*19*
25:2  26:*15*  31:*21*
32:*14*, *17*  34:*21*
42:*14*  43:*12*, *15*, *17*,
*23*  47:*17*
informed  24:*3*

informs  26:*8*
initial  39:*8*  41:*7*
input  45:*12*
instance  32:*18*
instructing  24:*22*
INSTRUCTIONS
51:*1*
insure  23:*1*
interacted  41:2
internal  23:*16*  28:*18*
34:*4*
Internet  34:*4*
interviewed  12:*7*, *14*
introduce  41:*17*
investigate  12:22
13:*8*, *20*  14:*18*  17:*8*
20:2, *22*  37:2, *6*, *20*
investigated  17:*5*
18:*16*  19:*12*  21:*19*
35:*18*, *23*  36:*4*, *15*
42:22
investigating  14:*3*
29:*13*  37:*17*  46:*13*
investigation  14:*10*
15:*15*, *19*  18:*12*, *21*
32:*3*, *4*  37:*16*  38:*10*,
*16*, *19*, *22*  39:*13*  40:*6*,
*7*  41:*5*  45:*12*
investigations  16:*5*, *9*
19:2  20:*9*  30:*21*
33:*19*  36:*21*  39:*8*, *17*
44:2, *10*  46:*3*
investigator  42:*23*
issues  7:*5*

< J >
Jersey  9:*7*
job  24:*10*  25:22
27:*15*, *21*
July  7:*11*  19:*10*, *14*
20:*7*

< K >
Kansas  9:*5*  11:*1*, *2*,
*15*
KAUFMAN  2:*13*
keep  41:*13*
keeps  33:*11*
kept  40:*15*

key  11:*17*  30:22
keys  11:*17*
kind  15:*23*
know  4:*20*  5:*7*  6:22
23:*5*  26:*19*  27:*1*, *6*
28:*6*, *23*  30:*13*  34:*18*,
*22*  42:*21*  43:*11*, *13*
46:*11*  47:*23*
knowledge  8:*16*  9:22
15:*18*  32:*1*
knows  34:*20*
KRISTINA  1:*3*  4:*8*
42:*9*
Kronos  33:*10*, *17*, *21*

< L >
lack  21:*11*
language  43:*24*
large  14:*5*
late  27:*14*  33:*12*
lateness  25:*24*
LAW  1:*16*  2:*3*
laws  16:*3*  27:*10*
lawsuit  9:*21*, *24*
lay  4:*15*
lead  21:*14*
leader  11:*7*, *24*
14:*14*  24:*8*, *11*  26:*4*
28:*23*  29:*15*  33:*16*
43:*24*  48:*11*
leaders  21:*14*  47:*19*
48:*6*
leadership  26:*18*
leave  10:*11*  24:*23*
27:2, *23*  28:*3*, *8*
29:*13*
leeway  35:*6*
left  10:*20*
legal  15:*12*
Lenexa  9:*5*
lets  47:22
levels  20:*23*
Lexington  13:*19*
lieu  27:22  28:2
lifting  49:*4*
line  27:*10*  52:*5*
little  31:*24*  35:*6*
LLC  1:*8*, *9*
LLP  2:*13*
LOCAL  1:*13*

located  23:*12*  29:*1*
31:*14*  32:*15*
location  13:*5*, *6*, *12*
37:*1*
lock  30:22
locked  18:*17*
log  28:*18*
long  47:*16*
longer  10:*13*  20:2
look  39:22
looking  32:*6*
looks  44:22
Lynda  1:*23*  50:*11*

< M >
MACY'S  1:*10*, *11*
2:*8*  7:*8*, *17*  13:*17*, *22*
20:*24*  25:*8*  42:22
Madam  49:*15*
main  12:22  34:*3*
majority  16:*6*
making  21:*12*  23:*6*
36:*16*
management  24:*24*
28:*9*
manager  10:*10*, *14*,
*21*  11:*3*, *8*, *10*  12:*3*,
*10*  16:*23*  17:*21*, *22*
19:*16*  25:*13*  26:*19*
28:*16*  32:*12*
managers  17:*11*, *13*
18:*1*  24:*16*, *20*  25:*11*
26:*8*  30:*7*  48:*4*, *5*, *11*
Manhattan  12:*24*
19:*21*
manner  17:*5*  47:22
March  19:*18*  20:*4*, *8*,
*18*  29:22  35:22
46:*15*
marked  41:*18*, *23*
42:*4*  44:*13*
matter  50:*7*
matters  16:22
mean  7:*16*  28:*11*
34:*13*  36:*8*  40:*21*, *23*
42:*19*
means  5:*14*  50:*17*
medical  23:*9*, *17*, *23*,
*24*  24:*10*  25:*3*, *14*

26:3  36:3, 19  47:7
48:20
**medication**  6:4, 11,
13, 16
**MELISSA**  2:3  4:6
**melissa@dereksmithla**
**w.com**  2:6
**member**  16:24
**MENDOZA**  2:3  3:7
4:5, 7  18:8  19:6, 9
34:17  35:9, 10  39:21
41:16  42:1  44:11
45:24  49:13
**mental**  5:23
**mentioned**  9:2  30:20
33:20  40:20  43:8
46:2  47:1, 6  48:3
**MIKHAYLOVA**  1:3
4:8  42:9
**minutes**  39:22, 24
47:16
**Missouri**  11:1
**moment**  41:22
**months**  16:8
**morning**  4:6
**multiple**  14:7  16:8,
22  30:3

**< N >**
**name**  4:6  43:21
45:4
**necessary**  51:4
**need**  5:6  21:2  25:14
27:13, 20  28:23, 24
35:7
**needed**  49:1
**needs**  49:2
**never**  9:9
**NEW**  1:1, 9, 11  2:5,
9, 14  9:7  12:18  13:3
19:20  36:22  46:19
**newer**  34:7  42:17, 19
45:2
**nodding**  4:20
**nonverbal**  4:20
**Notary**  1:24  50:13
53:23
**noted**  50:4  51:10
53:8

**notes**  18:19  41:1
50:5
**notice**  17:17  34:10
**NOVEMBER**  1:20
**Number**  3:9  32:17
41:20  43:22  46:11
**NY**  2:5

**< O >**
**oath**  5:12  9:17
**object**  16:20  34:9
37:9  38:23  44:6
47:13  48:7
**Objection**  8:21
10:16  14:11  15:16
22:15  24:18  25:18
27:4  29:9  31:10, 22
32:23  33:7, 23  34:15
35:14, 20  38:13
40:10  42:2, 15  43:19
45:6  46:21  48:22
**objections**  50:4
**obtain**  12:5
**occur**  48:2
**occurs**  37:12
**office**  18:18
**offices**  30:22
**Oh**  14:1
**Okay**  4:12, 15  5:4, 9,
10, 22  6:13, 15, 19, 22
7:12  8:3, 7, 14, 17, 24
9:4, 8, 13  10:2, 7, 11,
15, 22  11:3, 9, 12
12:5, 8, 12, 14, 19
13:1, 8, 14, 20  14:1, 9
15:4, 14  16:10, 13
17:10  18:8, 11, 22
19:7, 13, 22  20:4, 7,
14  21:7, 20  22:3, 10,
21  23:19  24:2, 13
25:10  26:6, 19  29:1,
4, 7, 21, 23  30:2, 9, 13
31:3, 8, 13, 17  32:2,
10  33:5, 15, 18  34:5
35:9, 22  36:7, 13, 21
37:2, 5, 23  38:3, 14,
20  39:7, 14  40:20
41:6, 14  42:1, 4  43:3,
16  44:11  45:4, 10, 18,

24  46:12  47:11  48:3,
17  49:12
**old**  45:9
**older**  34:1  44:24
**online**  16:5  22:23,
24  23:4  24:5
**open**  11:18  24:11, 22
26:5, 15
**option**  47:20
**Oracle**  32:12  33:6,
20  34:2, 7  43:6, 8, 11,
15, 16  45:1
**oral**  1:21
**order**  27:13
**orientation**  24:6
**original**  51:13
**outcome**  15:6  18:21
38:16, 18  39:1, 13
40:7, 12
**outside**  34:9

**< P >**
**Page**  3:6, 10  43:5
52:5
**pages**  53:4
**paper**  18:17  28:20
30:21  31:7
**partner**  15:11
**partners**  30:4
**peer**  48:16
**Penn**  2:4
**people**  27:20  37:15
**perform**  25:21
**person**  16:7  46:13
**personal**  32:16
**personnel**  30:17, 20
41:11
**pertains**  7:4
**ph**  43:5
**phone**  32:17
**physical**  5:23  18:17
31:9  33:3  40:13, 21
41:13  43:1
**physically**  30:21
**place**  16:7  29:15, 16
**Plaintiff**  1:4  2:7  4:7
9:20
**Plaintiff's**  42:5
**plan**  16:14

**Plaza**  2:4
**Please**  51:3, 7
**point**  5:7  11:10
**policies**  7:4, 22  8:4,
10, 12  17:10, 24  21:4,
21, 23, 24  23:6  24:15
25:11  26:7  35:4, 5
38:11  39:19  46:19
**policy**  15:10, 14, 20
18:7  23:9  26:17
27:11  28:2, 6  37:24
39:14
**position**  10:7  11:4, 6,
16, 20  12:6, 8, 16, 20
14:3  19:13
**positions**  11:21
**possible**  45:17, 19
**postemployment**
37:14, 21  38:2
**pounds**  49:5
**predecessors**  43:1
**prefer**  4:9, 10
**preference**  43:24
**pregnancy**  23:19
35:18, 24  36:10, 16
47:3, 5
**pregnancy-related**
23:20, 22  25:15
35:13  36:3, 19  48:20
49:7, 9
**pregnancy-specific**
47:10
**preliminary**  9:18
**prepared**  7:20
**prescription**  6:3, 10
**prevent**  5:19
**preventing**  16:3  26:3
**previous**  8:1  9:1, 14,
15  41:7
**previously**  45:1  48:3
**primarily**  8:11
29:14, 22  40:24
42:24  43:21
**Prior**  11:14, 19, 20
16:7  44:10
**probably**  39:23
**procedure**  39:5
**procedures**  7:4, 23
21:4  39:19
**proceedings**  50:4

Case 1:19-cv-08927-GBD-SLC Document 128-7 Filed 09/20/23 Page 26 of 33
Deposition of Courtney Cox
Kristina Mikhaylova v. Bloomingdale's Inc., et al.

process 14:*10* 15:*2,
15, 19, 22* 24:6 39:6
processes 27:2
produced 8:5 34:*13,
16*
promotion 10:*15*
proper 39:5
propounded 53:6
provide 24:*16*
provided 25:2
provider 25:3
provides 25:5
providing 24:*21*
Public 1:*24* 50:*13*
53:*23*
punching 33:*11*
purposes 7:*12* 41:*15*
put 28:*19*

< Q >
question 5:8 6:8
26:6 36:*18* 40:*11*
41:7 42:*12*
questions 5:*20* 6:*1,
17* 21:*21* 49:*14* 53:6
quite 14:5

< R >
raise 34:*14*
read 47:*17* 49:*16*
51:3 53:4
really 46:9
realm 36:5, 7, 10
47:5
reason 5:*17, 18* 6:*15*
24:*10* 51:5
reasonable 27:*17, 18*
recall 8:7 18:7
26:*16* 45:9 47:*4, 10*
receipt 51:*14*
receive 37:3
received 17:4
Recess 40:*1*
recollection 28:*13*
35:*21* 36:6 38:2
39:*16* 46:*23*
recommended 27:*24*
28:*4* 40:*19*
record 40:2, 16

41:*19* 42:*13*
recorded 40:8 41:8
records 18:*10* 30:*24*
34:*20, 23*
recount 18:*20*
regard 26:*17*
regarding 22:*12*
regardless 18:*1*
regards 47:7 49:6
regular 48:*16*
related 35:4 45:*14*
relations 12:*11, 20,
22* 19:*16* 20:*17*
28:*15* 30:6
relevance 34:*12*
relevant 34:*22* 35:6
religious 23:*10, 17*
remain 41:*10*
remained 19:*17*
remember 23:*14*
REMOTE 1:*21*
remotely 29:5
repeat 6:8
report 16:*18* 17:*22*
18:*1*
reported 12:3
Reporter 1:*23* 4:*18*
5:4 49:*15* 50:*12, 19*
reporting 17:*11*
reports 32:*13*
representative 29:*11*
Representing 2:*7, 10*
REPRODUCTION
50:*17*
request 18:9 23:*17*
24:4 25:*17* 27:8
28:*18* 34:*23*
requesting 26:*12*
requests 23:7 27:3
48:*18*
required 18:*1, 6*
22:*18* 26:*14* 39:4
requirements 26:*1*
research 32:7
resident 9:6 21:3
resources 12:*18*
respond 4:*17* 5:*1*
47:*21*
response 45:*10*

responses 4:*17, 21, 24*
responsibility 14:*16*
restructure 21:*1*
restructured 20:*20*
resulted 39:2
RETAIL 1:*12*
retaliation 22:*1, 13,
20* 36:*14, 15* 38:8
46:*15* 47:9
return 51:*12*
review 24:*24* 49:*16*
reviewed 7:*22, 23*
8:*4, 10* 24:6 27:*16*
RICHARD 1:*16*
right 4:*12* 5:*15*
16:*15, 16* 18:*23* 20:5
29:*15, 16*
rules 4:*16*
run 34:2
RWDSU/UFCW 1:*14*

< S >
sales 41:*17* 43:*12*
44:4
Salesforce 42:9, 13
saying 7:*13*
says 42:6, 8 43:5
44:*18*
scan 31:*1*
schedule 33:*13*
SCHOEMAN 2:*13*
screen 44:*12, 18* 46:*1*
see 32:*13* 42:6, 10
43:4, 15 44:*16, 19*
seen 44:*21* 48:*24*
49:6, 8
sees 17:*21* 25:*13*
send 28:*17*
senior 12:*17* 19:*16*
separate 23:*24* 24:*13,
15* 37:*17*
seriously 17:6, 17
seven 11:*11*
severity 15:8
sexual 16:3, 4 18:4
21:*21* 22:*12, 19* 32:5
35:2 39:9 44:3
45:*13* 47:8
sgerber@schoeman.co

m 2:*15*
shadowed 16:8
shadowing 16:7
Shane 41:*16, 18*
sheet 51:6, 8, 10, 13
53:8
shifted 19:*18*
show 24:*11*
sign 18:*19* 49:*16*
51:7
Signature 53:*14*
signing 30:*23* 51:9
simply 28:*17*
sit 14:*16* 27:*20*
sitting 27:*21* 49:2
situation 15:7, 8 48:2
situations 47:*22*
SMITH 2:3
software 31:*20*
Soho 13:*12* 37:*1*
somebody 32:*19*
soon 39:*23*
sorry 6:9 20:*11*
22:*16*
sort 44:*22*
SOUTHERN 1:*1*
space 51:5
speak 8:*17, 24* 14:*21*
speaking 5:*1, 2*
specific 38:*1* 47:5
specifically 15:*22*
spent 11:*23*
spoke 8:*1*
stage 39:8
standard 16:*15*
start 7:9 23:2
started 7:*11* 42:*21*
starting 11:4, 6 36:*24*
state 9:6, 8 24:8
51:5
stated 16:*14* 25:5
33:6 48:*18*
statement 9:*16* 14:*18*
statements 18:*18*
STATES 1:*1*
stating 27:*12*
status 29:*24*
STENOGRAPHIC
50:*12*

step 39:5
STEVEN 2:13
stop 34:11
storage 35:11
STORE 1:12 10:21
11:14, 18 12:1, 24
13:2, 10, 11, 15, 16
14:2, 5 19:23 21:6
28:22 29:2, 8, 11
32:15 36:22 43:9
46:15 48:14
stored 18:15, 17
30:18 34:21 44:4
stores 14:4, 7 19:20,
24 20:1 31:21
STOREWORKERS
1:11, 14
Street 2:9 13:19
structure 29:17, 18
subject 51:9
Subscribed 53:17
substance 53:7
substantiate 15:1
substantiated 41:12
46:8, 10
suffer 5:22
suggest 25:16 26:20
Suite 2:4
summarize 41:4
SUPERVISION 50:18
supervisor 8:2
supervisors 48:13
supposed 17:22
sure 4:17, 22, 23
12:21 19:12 21:12
23:13 42:20 43:13
45:8
suspended 38:7
suspension 38:9
switched 34:7
sworn 1:21 4:2
5:14 53:17
synonymous 48:5
system 31:2, 16
32:12 33:10, 17 34:1
35:11 42:18, 24 43:9
45:2, 3, 5, 11, 15, 21
systems 33:9

< T >

take 5:6, 9 14:17
17:6, 16 18:20 22:19
49:17
taken 6:3, 10 50:6
takes 23:1
talk 26:10, 21
talking 7:14 13:17
18:23
talks 35:1
tardiness 33:5
Target 10:6, 8, 12, 22,
24 11:4, 23
team 11:7, 24 20:21
24:24 25:4 27:7, 16
28:9, 17
teams 29:1
Technical 6:6
technically 28:22
technology 32:1
tell 5:15 7:20 17:21
telling 16:23
ten 10:9
term 21:11
terminate 15:5
terminated 37:8
38:6, 15
termination 15:3
39:3, 20 40:16, 19
terms 35:1
testified 4:3 9:10
Thank 46:1 49:14
think 15:22 20:11
32:16 34:9 35:7
39:17, 22 45:16, 21
Third 13:3
thirty 51:14
three 10:10 12:1
19:20, 24 20:1
TIERNEY 2:8 8:21
10:16 14:11 15:16
16:20 19:4, 7 22:15
24:18 25:18 27:4
29:9 31:10, 22 32:23
33:7, 23 34:8, 24
35:14, 20 37:9 38:13,
23 40:10 42:15
43:19 44:6 45:6
46:21 47:13 48:7, 22
49:15

time 12:10 15:13
19:4, 6 26:2, 10
27:13, 20, 22 29:10
33:10, 11 35:3 42:21
44:9
times 15:8 17:4
25:22 39:11
title 12:2 19:15, 17
today 5:12, 20 6:17,
23
today's 7:21 8:18
told 18:2
top 23:14 42:8
topics 34:10, 13, 16
track 33:11
tracked 22:24
trade 12:18 19:20
trained 24:11
training 7:23 15:19,
23 16:1, 5, 6, 11 18:5
22:17, 24 23:1 25:10
26:24 47:2, 12, 18, 21
trainings 16:11
22:11, 22 23:3 46:19
trains 47:24
transcript 3:14 50:8,
16 51:15, 16
transcription 53:5
transferred 34:3
45:2
true 50:7
truth 5:15
truthfully 5:20 6:17
try 34:15
two 34:3
type 32:7 37:16
41:5 43:14
types 46:24 47:2
typically 7:18
typing 41:3

< U >

ultimate 15:4
umbrella 7:7
understand 5:11, 24
14:17 34:12
understanding 21:13
30:11 44:8
understood 7:14

unemployment 9:12
unfortunately 30:15
UNION 1:12 17:5
38:21 39:4, 10
unionized 17:3 48:15
unit 26:22
UNITED 1:1, 11, 13
Unlimited 42:9
unsubstantiate 14:24
unsubstantiated 39:2
40:14
updated 8:15
UPDIKE 2:13
upload 45:21
use 17:15 33:10
42:13 45:3
utilize 7:3

< V >

verbal 4:17, 23
verbiage 48:12
version 31:16
Vetter 1:23 50:11
video 47:17
VIDEOGRAPHER
41:21
violate 27:11
violation 15:10
volition 10:20
VP 12:17 30:4
vs 1:5

< W >

wait 4:24 5:8
walls 30:7
want 34:12, 14, 15, 17
41:14 47:1
wanted 10:13, 19
28:14 34:18
Watkins 8:2 9:1
12:15 15:13 30:5
way 22:24 45:20
website 23:16 28:18
WEDNESDAY 1:20
well 12:4 13:13
14:3 17:2, 9 19:15
22:1 24:12 30:7
31:16 32:11 34:24
36:8 37:1, 18 42:20

Case 1:19-cv-08927-GBD-SLC    Document 128-7    Filed 09/20/23    Page 28 of 33

Deposition of Courtney Cox                                    Kristina Mikhaylova v. Bloomingdale's Inc., et al.

43:*2*  45:*1*

**went**  16:*2*

**white**  15:*9*

**WHOLESALE**  1:*12*

**withdrawn**  8:*8*
10:*23*  11:*19*  13:*14*,
*15*  20:*15*  21:*8*, *23*
24:*14*  25:*12*  26:*22*,
*24*  30:*16*  31:*19*
33:*19*  35:*16*  37:*5*
38:*4*, *6*  40:*2*, *3*  43:*3*
44:*21*  45:*11*  46:*6*
48:*4*, *19*  49:*12*

**WITNESS**  3:*3*  7:*2*
51:*1*

**witnesses**  14:*20*, *21*

**words**  17:*15*

**work**  10:*5*, *24*  11:*12*
13:*5*  25:*9*  27:*13*
29:*5*

**worked**  10:*6*, *23*  27:*6*

**working**  7:*9*  48:*13*

**workplace**  22:*13*

**write**  4:*19*

**written**  16:*10*  26:*7*
37:*23*  39:*14*

**< X >**

**XYZ**  37:*19*

**< Y >**

**yeah**  40:*22*

**year**  11:*23*  12:*12*
20:*17*  29:*22*  30:*13*

**years**  8:*9*  10:*9*, *10*
11:*11*  12:*2*  30:*14*

**YORK**  1:*1*, *10*, *11*
2:*5*, *9*, *14*  12:*18*  13:*3*,
*4*  19:*20*  36:*22*

**WORD LIST**

**< 1 >**
**1** *(7)*
**10:00** *(1)*
**1000** *(1)*
**10001** *(1)*
**10022** *(1)*
**10119** *(1)*
**10176** *(1)*
**11:16** *(1)*
**12th** *(1)*
**151** *(1)*
**19-8927** *(1)*

**< 2 >**
**2** *(4)*
**20** *(1)*
**2015** *(2)*
**2019** *(18)*
**2020** *(6)*
**2022** *(5)*
**212-494-1621** *(1)*
**212-587-0760** *(1)*
**212-661-5030** *(1)*
**22** *(1)*
**24** *(2)*

**< 3 >**
**3** *(2)*
**30** *(2)*
**34th** *(1)*

**< 4 >**
**4** *(4)*
**41** *(1)*
**44** *(1)*
**45** *(1)*
**4905** *(1)*

**< 5 >**
**5** *(1)*
**50** *(1)*
**551** *(1)*

**< 6 >**
**60th** *(1)*

**< A >**

**a.m** *(2)*
**a/k/a** *(1)*
**ability** *(2)*
**able** *(3)*
**absence** *(4)*
**absent** *(1)*
**access** *(8)*
**accessed** *(3)*
**accessible** *(2)*
**accommodate** *(1)*
**accommodation** *(30)*
**accommodations** *(9)*
**accountable** *(1)*
**accurate** *(1)*
**accurately** *(1)*
**ACKNOWLEDGMEN T** *(1)*
**acquisition** *(1)*
**act** *(1)*
**action** *(4)*
**actual** *(3)*
**addition** *(1)*
**Additionally** *(1)*
**address** *(1)*
**addressed** *(1)*
**ADLM** *(1)*
**affect** *(1)*
**AFL-CIO** *(1)*
**agreement** *(2)*
**ahead** *(2)*
**alcohol** *(1)*
**allow** *(1)*
**allowed** *(1)*
**AND/OR** *(1)*
**Anita** *(5)*
**annual** *(1)*
**annually** *(1)*
**anonymous** *(1)*
**answer** *(23)*
**answered** *(1)*
**answering** *(2)*
**answers** *(1)*
**Anxiety** *(1)*
**anybody** *(1)*
**anymore** *(1)*
**APPEARANCES** *(1)*
**Applied** *(1)*
**apply** *(2)*
**appropriate** *(2)*

**approve** *(1)*
**Approximately** *(5)*
**area** *(2)*
**areas** *(1)*
**arrived** *(1)*
**aside** *(1)*
**asked** *(1)*
**assist** *(2)*
**assistance** *(1)*
**assisted** *(1)*
**associate** *(1)*
**assume** *(1)*
**assumed** *(1)*
**asthma** *(1)*
**attached** *(3)*
**attendance** *(2)*
**attended** *(1)*
**attorney** *(2)*
**attorneys** *(1)*
**available** *(1)*
**Avenue** *(4)*
**aware** *(2)*

**< B >**
**b)(6** *(1)*
**back** *(6)*
**bargaining** *(2)*
**based** *(9)*
**Basic** *(2)*
**beginning** *(1)*
**believe** *(5)*
**better** *(2)*
**BETTY** *(1)*
**Betty.tierney@macys.c om** *(1)*
**beyond** *(1)*
**bit** *(1)*
**black** *(1)*
**BLM000754** *(2)*
**BLM000807** *(2)*
**BLOOMINGDALE'S** *(21)*
**BOBBY** *(1)*
**book** *(1)*
**BOOKER** *(1)*
**born** *(1)*
**boss** *(1)*
**bottom** *(3)*
**branch** *(1)*

**break** *(2)*
**B's** *(1)*
**building** *(1)*
**business** *(1)*

**< C >**
**call** *(1)*
**called** *(1)*
**calls** *(1)*
**carefully** *(1)*
**carrier** *(1)*
**CARROTS** *(1)*
**case** *(4)*
**CASTELLANI** *(1)*
**categories** *(1)*
**categorize** *(1)*
**CERTIFICATION** *(2)*
**certify** *(2)*
**CERTIFYING** *(1)*
**change** *(9)*
**changes** *(2)*
**character** *(1)*
**chooses** *(1)*
**CHRISTOHER** *(1)*
**City** *(2)*
**claim** *(3)*
**claims** *(6)*
**clarify** *(1)*
**clear** *(5)*
**close** *(1)*
**cloud** *(2)*
**Co-Counsel** *(1)*
**code** *(6)*
**colleague** *(6)*
**colleagues** *(5)*
**collective** *(2)*
**combination** *(1)*
**come** *(4)*
**comes** *(3)*
**commencing** *(1)*
**commission** *(1)*
**company** *(18)*
**company's** *(1)*
**compared** *(1)*
**complain** *(2)*
**complaining** *(2)*
**complaint** *(13)*
**complaints** *(10)*

complete *(3)*
completely *(1)*
compliance *(1)*
computer *(1)*
concern *(5)*
concerns *(1)*
concluded *(1)*
condition *(4)*
conditions *(1)*
conduct *(12)*
conducted *(3)*
conducting *(1)*
confident *(1)*
confidentiality *(1)*
consider *(1)*
considered *(3)*
considering *(1)*
consumed *(1)*
contact *(1)*
contained *(1)*
content *(2)*
CONTROL *(1)*
copy *(1)*
correct *(27)*
corrections *(3)*
counsel *(1)*
country *(2)*
COURT *(7)*
COURTNEY *(5)*
coworkers *(1)*
COX *(8)*
Crayco *(1)*
culture *(3)*
current *(2)*
currently *(2)*

< D >
d/b/a *(3)*
data *(1)*
database *(5)*
date *(3)*
day *(3)*
days *(1)*
decide *(1)*
decision *(3)*
deemed *(1)*
defendant *(1)*
Defendants *(3)*
DENNIS *(1)*

deny *(1)*
DEPARTMENT *(8)*
depend *(1)*
depended *(1)*
depending *(1)*
Depends *(4)*
DEPONENT *(1)*
deposed *(1)*
deposing *(1)*
deposition *(14)*
DEREK *(1)*
describe *(1)*
describing *(1)*
Description *(1)*
determination *(3)*
determinations *(1)*
DIAZ *(1)*
dictated *(1)*
differences *(1)*
different *(4)*
differently *(1)*
difficult *(1)*
difficulties *(1)*
digital *(9)*
digitally *(2)*
direct *(3)*
directly *(1)*
directs *(1)*
disability *(5)*
disciplinary *(7)*
disclose *(1)*
discloses *(1)*
discovery *(1)*
discriminate *(1)*
discriminated *(1)*
discrimination *(38)*
Disney *(1)*
distracting *(1)*
DISTRICT *(3)*
doctor *(2)*
document *(4)*
documentation *(2)*
documents *(4)*
doing *(7)*
dozen *(1)*
duly *(1)*
duties *(1)*

< E >

early *(1)*
Edition *(1)*
either *(7)*
elaborate *(1)*
email *(2)*
employee *(27)*
employees *(8)*
employee's *(1)*
employer *(3)*
employment *(1)*
encourage *(2)*
engagement *(3)*
entail *(1)*
entailed *(1)*
entire *(1)*
environment *(1)*
errata *(5)*
ESQUIRE *(3)*
essential *(1)*
essentially *(2)*
events *(1)*
evidence *(1)*
EXAMINATION *(2)*
example *(2)*
examples *(1)*
executive *(3)*
Exhibit *(8)*
EXHIBITS *(2)*
exist *(1)*
expanded *(3)*
experienced *(1)*
expert *(1)*
experts *(1)*
expires *(1)*
explain *(3)*
extent *(2)*

< F >
fact *(1)*
fail *(1)*
Fair *(1)*
fairly *(1)*
fall *(2)*
far *(8)*
fed *(1)*
field *(1)*
fields *(1)*
Fifth *(1)*
file *(11)*

files *(5)*
fill *(1)*
filling *(1)*
finding *(1)*
findings *(1)*
first *(2)*
five *(1)*
flagship *(7)*
Floor *(1)*
FMLA *(1)*
focus *(4)*
focused *(1)*
follow *(2)*
follows *(1)*
force *(3)*
foregoing *(3)*
form *(32)*
formal *(1)*
FORTY *(1)*
forward *(6)*
forwards *(1)*
found *(2)*
four *(1)*
frame *(2)*
full *(1)*
fully *(4)*
function *(2)*
functions *(1)*

< G >
gender *(1)*
general *(5)*
GERBER *(2)*
getting *(1)*
give *(4)*
given *(5)*
gives *(1)*
go *(7)*
goes *(1)*
going *(10)*
Good *(1)*
great *(1)*
grievance *(1)*
ground *(1)*
GROUP *(1)*
guess *(3)*

< H >
half *(1)*

handbook  (6)
handled  (1)
handwritten  (3)
happy  (1)
harass  (1)
harassed  (1)
harassment  (34)
head  (1)
hearings  (2)
held  (3)
helping  (1)
HIPAA  (3)
hire  (1)
hold  (1)
honestly  (1)
hotline  (1)
hours  (2)
HR  (25)
human  (1)
hundred  (1)

< I >
IDENTIFICATION
  (3)
imaging  (2)
immediately  (1)
impair  (2)
imperative  (1)
implemented  (1)
included  (2)
including  (2)
incorporate  (1)
incorrect  (1)
indicate  (1)
individual  (12)
individually  (4)
individuals  (8)
individual's  (1)
inform  (6)
information  (13)
informed  (1)
informs  (1)
initial  (2)
input  (1)
instance  (1)
instructing  (1)
INSTRUCTIONS  (1)
insure  (1)
interacted  (1)

internal  (3)
Internet  (1)
interviewed  (2)
introduce  (1)
investigate  (10)
investigated  (9)
investigating  (4)
investigation  (17)
investigations  (12)
investigator  (1)
issues  (1)

< J >
Jersey  (1)
job  (4)
July  (4)

< K >
Kansas  (4)
KAUFMAN  (1)
keep  (1)
keeps  (1)
kept  (1)
key  (2)
keys  (1)
kind  (1)
know  (17)
knowledge  (4)
knows  (1)
KRISTINA  (3)
Kronos  (3)

< L >
lack  (1)
language  (1)
large  (1)
late  (2)
lateness  (1)
LAW  (2)
laws  (1)
lawsuit  (2)
lay  (1)
lead  (1)
leader  (11)
leaders  (3)
leadership  (1)
leave  (7)
leeway  (1)
left  (1)

legal  (1)
Lenexa  (1)
lets  (1)
levels  (1)
Lexington  (1)
lieu  (2)
lifting  (1)
line  (2)
little  (2)
LLC  (2)
LLP  (1)
LOCAL  (2)
located  (4)
location  (4)
lock  (1)
locked  (1)
log  (1)
long  (2)
longer  (2)
look  (1)
looking  (1)
looks  (1)
Lynda  (2)

< M >
MACY'S  (11)
Madam  (1)
main  (2)
majority  (1)
making  (3)
management  (2)
manager  (17)
managers  (11)
Manhattan  (2)
manner  (2)
March  (7)
marked  (4)
matter  (1)
matters  (1)
mean  (7)
means  (2)
medical  (12)
medication  (4)
MELISSA  (2)
melissa@dereksmithla
w.com  (1)
member  (1)
MENDOZA  (16)
mental  (1)

mentioned  (9)
MIKHAYLOVA  (3)
minutes  (3)
Missouri  (1)
moment  (1)
months  (1)
morning  (1)
multiple  (4)

< N >
name  (3)
necessary  (1)
need  (8)
needed  (1)
needs  (1)
never  (1)
NEW  (15)
newer  (4)
nodding  (1)
nonverbal  (1)
Notary  (3)
noted  (3)
notes  (3)
notice  (2)
NOVEMBER  (1)
Number  (5)
NY  (1)

< O >
oath  (2)
object  (7)
Objection  (25)
objections  (1)
obtain  (1)
occur  (1)
occurs  (1)
office  (1)
offices  (1)
Oh  (1)
Okay  (112)
old  (1)
older  (2)
online  (5)
open  (5)
option  (1)
Oracle  (11)
oral  (1)
order  (1)
orientation  (1)

Deposition of Courtney Cox
Kristina Mikhaylova v. Bloomingdale's Inc., et al.

original  *(1)*
outcome  *(8)*
outside  *(1)*

**< P >**
Page  *(4)*
pages  *(1)*
paper  *(4)*
partner  *(1)*
partners  *(1)*
peer  *(1)*
Penn  *(1)*
people  *(2)*
perform  *(1)*
person  *(2)*
personal  *(1)*
personnel  *(3)*
pertains  *(1)*
ph  *(1)*
phone  *(1)*
physical  *(8)*
physically  *(1)*
place  *(3)*
Plaintiff  *(4)*
Plaintiff's  *(1)*
plan  *(1)*
Plaza  *(1)*
Please  *(2)*
point  *(2)*
policies  *(20)*
policy  *(11)*
position  *(11)*
positions  *(1)*
possible  *(2)*
postemployment  *(3)*
pounds  *(1)*
predecessors  *(1)*
prefer  *(2)*
preference  *(1)*
pregnancy  *(7)*
pregnancy-related  *(9)*
pregnancy-specific  *(1)*
preliminary  *(1)*
prepared  *(1)*
prescription  *(2)*
prevent  *(1)*
preventing  *(2)*
previous  *(5)*
previously  *(2)*

primarily  *(7)*
Prior  *(5)*
probably  *(1)*
procedure  *(1)*
procedures  *(4)*
proceedings  *(1)*
process  *(8)*
processes  *(1)*
produced  *(3)*
promotion  *(1)*
proper  *(1)*
propounded  *(1)*
provide  *(1)*
provided  *(1)*
provider  *(1)*
provides  *(1)*
providing  *(1)*
Public  *(3)*
punching  *(1)*
purposes  *(2)*
put  *(1)*

**< Q >**
question  *(7)*
questions  *(6)*
quite  *(1)*

**< R >**
raise  *(1)*
read  *(4)*
really  *(1)*
realm  *(4)*
reason  *(6)*
reasonable  *(2)*
recall  *(6)*
receipt  *(1)*
receive  *(1)*
received  *(1)*
Recess  *(1)*
recollection  *(6)*
recommended  *(3)*
record  *(4)*
recorded  *(2)*
records  *(4)*
recount  *(1)*
regard  *(1)*
regarding  *(1)*
regardless  *(1)*
regards  *(2)*

regular  *(1)*
related  *(2)*
relations  *(7)*
relevance  *(1)*
relevant  *(2)*
religious  *(2)*
remain  *(1)*
remained  *(1)*
remember  *(1)*
REMOTE  *(1)*
remotely  *(1)*
repeat  *(1)*
report  *(3)*
reported  *(1)*
Reporter  *(6)*
reporting  *(1)*
reports  *(1)*
representative  *(1)*
Representing  *(2)*
REPRODUCTION  *(1)*
request  *(7)*
requesting  *(1)*
requests  *(3)*
required  *(5)*
requirements  *(1)*
research  *(1)*
resident  *(2)*
resources  *(1)*
respond  *(3)*
response  *(1)*
responses  *(3)*
responsibility  *(1)*
restructure  *(1)*
restructured  *(1)*
resulted  *(1)*
RETAIL  *(1)*
retaliation  *(8)*
return  *(1)*
review  *(2)*
reviewed  *(6)*
RICHARD  *(1)*
right  *(8)*
rules  *(1)*
run  *(1)*
RWDSU/UFCW  *(1)*

**< S >**
sales  *(3)*

Salesforce  *(2)*
saying  *(1)*
says  *(4)*
scan  *(1)*
schedule  *(1)*
SCHOEMAN  *(1)*
screen  *(3)*
see  *(8)*
seen  *(4)*
sees  *(2)*
send  *(1)*
senior  *(2)*
separate  *(4)*
seriously  *(2)*
seven  *(1)*
severity  *(1)*
sexual  *(12)*
sgerber@schoeman.co
m  *(1)*
shadowed  *(1)*
shadowing  *(1)*
Shane  *(2)*
sheet  *(5)*
shifted  *(1)*
show  *(1)*
sign  *(3)*
Signature  *(1)*
signing  *(2)*
simply  *(1)*
sit  *(2)*
sitting  *(2)*
situation  *(3)*
situations  *(1)*
SMITH  *(1)*
software  *(1)*
Soho  *(2)*
somebody  *(1)*
soon  *(1)*
sorry  *(3)*
sort  *(1)*
SOUTHERN  *(1)*
space  *(1)*
speak  *(4)*
speaking  *(2)*
specific  *(2)*
specifically  *(1)*
spent  *(1)*
spoke  *(1)*
stage  *(1)*

standard  *(1)*
start  *(2)*
started  *(2)*
starting  *(3)*
state  *(4)*
stated  *(4)*
statement  *(2)*
statements  *(1)*
STATES  *(1)*
stating  *(1)*
status  *(1)*
STENOGRAPHIC  *(1)*
step  *(1)*
STEVEN  *(1)*
stop  *(1)*
storage  *(1)*
STORE  *(24)*
stored  *(5)*
stores  *(6)*
STOREWORKERS  *(2)*
Street  *(2)*
structure  *(2)*
subject  *(1)*
Subscribed  *(1)*
substance  *(1)*
substantiate  *(1)*
substantiated  *(3)*
suffer  *(1)*
suggest  *(2)*
Suite  *(1)*
summarize  *(1)*
SUPERVISION  *(1)*
supervisor  *(1)*
supervisors  *(1)*
supposed  *(1)*
sure  *(10)*
suspended  *(1)*
suspension  *(1)*
switched  *(1)*
sworn  *(4)*
synonymous  *(1)*
system  *(16)*
systems  *(1)*

< T >
take  *(8)*
taken  *(3)*

takes  *(1)*
talk  *(2)*
talking  *(3)*
talks  *(1)*
tardiness  *(1)*
Target  *(8)*
team  *(9)*
teams  *(1)*
Technical  *(1)*
technically  *(1)*
technology  *(1)*
tell  *(3)*
telling  *(1)*
ten  *(1)*
term  *(1)*
terminate  *(1)*
terminated  *(3)*
termination  *(5)*
terms  *(1)*
testified  *(2)*
Thank  *(2)*
think  *(9)*
Third  *(1)*
thirty  *(1)*
three  *(5)*
TIERNEY  *(35)*
time  *(15)*
times  *(4)*
title  *(3)*
today  *(4)*
today's  *(2)*
told  *(1)*
top  *(2)*
topics  *(3)*
track  *(1)*
tracked  *(1)*
trade  *(2)*
trained  *(1)*
training  *(17)*
trainings  *(6)*
trains  *(1)*
transcript  *(5)*
transcription  *(1)*
transferred  *(2)*
true  *(1)*
truth  *(1)*
truthfully  *(2)*
try  *(1)*
two  *(1)*

type  *(4)*
types  *(2)*
typically  *(1)*
typing  *(1)*

< U >
ultimate  *(1)*
umbrella  *(1)*
understand  *(4)*
understanding  *(3)*
understood  *(1)*
unemployment  *(1)*
unfortunately  *(1)*
UNION  *(5)*
unionized  *(2)*
unit  *(1)*
UNITED  *(3)*
Unlimited  *(1)*
unsubstantiate  *(1)*
unsubstantiated  *(2)*
updated  *(1)*
UPDIKE  *(1)*
upload  *(1)*
use  *(4)*
utilize  *(1)*

< V >
verbal  *(2)*
verbiage  *(1)*
version  *(1)*
Vetter  *(2)*
video  *(1)*
VIDEOGRAPHER  *(1)*
violate  *(1)*
violation  *(1)*
volition  *(1)*
VP  *(2)*
vs  *(1)*

< W >
wait  *(2)*
walls  *(1)*
want  *(6)*
wanted  *(4)*
Watkins  *(5)*
way  *(2)*
website  *(2)*
WEDNESDAY  *(1)*

well  *(18)*
went  *(1)*
white  *(1)*
WHOLESALE  *(1)*
withdrawn  *(28)*
WITNESS  *(3)*
witnesses  *(2)*
words  *(1)*
work  *(7)*
worked  *(3)*
working  *(2)*
workplace  *(1)*
write  *(1)*
written  *(4)*

< X >
XYZ  *(1)*

< Y >
yeah  *(1)*
year  *(5)*
years  *(6)*
YORK  *(13)*