# EXHIBIT 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

| | |
|---|---|
| ABDOUL KARIM BARRY, | Civil Action No 20-10692 |
| Plaintiff, | Plaintiff Demands A Jury Trial |
| -against- | |
| MACY'S, INC.; BLOOMINGDALE'S, INC.; BLOOMINGDALES, LLC; NATALIA SURAZHSKY, individually; and APRIL DITO, individually, | **COMPLAINT** |
| Defendants. | |

---------------------------------------------------------------X

Plaintiff, ABDOUL KARIM BARRY, by and through his attorneys, the DEREK SMITH LAW GROUP, PLLC, as and for his Complaint, alleges as follows upon information and belief:

## NATURE OF THE CLAIM

1. Plaintiff is seeking damages to redress the injuries he has suffered as a result of being discriminated and retaliated against by his employers on the basis of his race, his national origin, his disabilities, their retaliation against him for complaining about their discriminatory practices, and the hostile work environment to which they subjected him, all of which ultimately culminated in his constructive discharge.

2. Defendants' conduct violated, *inter alia*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA"), the New York State Human Rights Law, N.Y. Executive Law, § 290, *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code 8-107 *et seq.* ("NYCHRL"); and common law.

BLM001212

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action per 29 U.S.C. §§ 2617, 1331, and 1343, as this case involves federal questions under Title VII, the ADA, and the FMLA.

4. The Court also has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367.

5. Plaintiff previously submitted a charge to Equal Employment Opportunity Commission (EEOC), and received a "Right to Sue Letter" from the EEOC on or about September 22, 2020.  Plaintiff has thereby satisfied all administrative prerequisites to filing this case, and has done so within ninety days of receiving the Right to Sue Letter.

6. This Court has personal jurisdiction over the corporate/entity Defendants, as they are headquartered in or have an office in, and do substantial business in, New York.

7. This Court has personal jurisdiction over the individual Defendants, as each works in, or does substantial business in, New York.

8. Venue is proper in this District because the events, acts, and omissions that gave rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

9. Plaintiff is an individual sixty-one year-old man who lives in Brooklyn, New York.

10. Defendant MACY'S INC. ("MACY'S") is a business corporation duly organized and existing under the laws of the State of Delaware.

11. Defendant BLOOMINGDALE'S INC. is a business corporation and subsidiary of MACY'S, duly organized and existing under the laws of the State of Ohio.

12. Defendant BLOOMINGDALE'S LLC (hereinafter referred to collectively with BLOOMINGDALE'S INC. as "BLOOMINGDALE'S) is a limited liability company and

BLM001213

subsidiary of MACY'S, duly organized and existing under, and by the virtue of, the laws of the State of Ohio.

13. Upon information and belief, each Defendant employs over 100 individuals on a full-time or full-time-equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

14. Upon information and belief, at all times relevant each of the Defendants has jointly employed Plaintiff, with overlapping power to hire, fire, discipline, supervise, compensate, and document him.

15. By way of example, Plaintiff's paystubs list BLOOMINGDALE'S as his employer, yet his W-2s list MACY'S as his employer, and MACY'S maintains his benefit plans.

16. Upon information and belief, at times relevant hereto, NATALIA SURAZHSKY has been Defendants' employee, holding the position of BLOOMINGDALE'S "Alterations Manager"; as such, she had authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment, or otherwise influence decision-making regarding the same.

17. At all times material, SURAZHSKY harassed and discriminated against Plaintiff on the basis of his race/ethnicity (Black) and national origin (Guinea).

## FACTUAL ALLEGATIONS

18. BLOOMINGDALE'S hired Plaintiff as a fitter/tailor on about December 15, 2017.

19. Plaintiff was an excellent tailor and hard worker with no disciplinary problems, and also a friendly person.  He was universally liked and respected by his colleagues and supervisors, as well as BLOOMINGDALE'S customers – many of whom requested Plaintiff specifically when they came for fittings.

20. Indeed, Defendants selected Plaintiff to appear prominently on the "alterations and tailoring"

3

BLM001214

page of BLOOMINGDALE'S BLOOMINGDALE'S website.[1] He was also regularly selected to be the tailor who fitted models for BLOOMINGDALE'S advertising photoshoots.

21. Defendants knew that Plaintiff has four children, and needs to be home helping to care for them when his babysitter is unavailable; Defendants' Human Resources (HR) staff previously granted Plaintiff's request to have Wednesday and Thursday be his designated weekly days off from work, because on those days his babysitter is unavailable.

22. On about November 11, 2019, SURAZHSKY started working at BLOOMINGDALE'S as Plaintiff's manager.

23. The very next day, November 12, 2019, she began making racist and discriminatory comments about Blacks and French speakers. She told Plaintiff point-blank: "I don't know why they would put your picture on the Company's website, you're Black."

24. Starting on about November 13, 2019, SURAZHSKY began regularly micromanaging Plaintiff, revising or changing his measurements or markings, and accusing him (falsely) of poor workmanship. Plaintiff had never previously been accused of inadequate work during his time at BLOOMINGDALE'S.

25. Shortly after she started, SURAZHSKY also began questioning Plaintiff why he was leaving to attend photoshoots.

26. SURAZHSKY began refusing to allow Plaintiff to do work for customers – even customers who had asked specifically for Plaintiff to tailor them.

27. On one occasion, SURAZHSKY also misplaced the pants of a suit that Plaintiff had marked for alteration – and when the customer came to pick up the suit, she falsely claimed that

---

[1] See https://www.bloomingdales.com/b/about-us/shopping/alterations-and-tailoring.

more time was needed to work on it because Plaintiff had marked it improperly.

28. On another occasion, SURAZHSKY told Plaintiff that he had marked an item for alterations improperly, and insisted that he return to the fitting room with the customer to show Plaintiff how to mark the item. Except the customer complained that he did not like the new markings that SURAZHSKY made, and insisted that she put back Plaintiff's markings.

29. Shortly after that, SURAZHSKY gave Plaintiff a written warning for allegedly improperly marking up suits for tailoring. Plaintiff grieved that warning through his Union; ultimately, after his Union met with HR representatives, the warning was rescinded, and Bloomingdale's promised to investigate and make appropriate corrections to SURAZHSKY'S behavior – but it did not.

30. In December 2019, Plaintiff complained to HR about SURAZHSKY'S abusive and discriminatory behavior; an HR representative promised to help, but nothing changed.

31. In about January 2020, SURAZHSKY yelled at Plaintiff and a sales associate from Cameroon for speaking French to each other – their native language. Tellingly, SURAZHSKY speaks in Russian with other native Russian speakers at work.

32. On about January 24, 2020, SURAZHSKY yelled at Plaintiff for working in a different location than usual (because a piece of equipment at the tailor station was not working), and then exclaimed: "you're fucking Black" and "I don't know why they hire Blacks like you."

33. Plaintiff was so upset by this harassment that he felt like he was having a heart attack, and he went to the nearest emergency room, at Mt. Sinai hospital.

34. Plaintiff was given an electrocardiogram, and diagnosed with high blood pressure, and was warned that he was indeed at risk of having a heart attack. Plaintiff's disability qualifies under the ADA (as well as the New York State Human Rights Law and New York City

BLM001216

Human Rights Law), as it limits his major bodily function (cardiovascular).

35. On about February 5, 2020, Plaintiff e-mailed HR about SURAZHSKY'S abuse and mistreatment. Nothing was done to help him, and SURAZHSKY continued to abuse Plaintiff. In fact, anytime SURAZHSKY saw Plaintiff at work, she acted noticeably hostile toward him. She has also teased him, saying: "Don't you know my boyfriend is black?"

36. Plaintiff returned to HR on February 23, 2020, and reiterated his complaints about SURAZHSKY. In response, HR called SURAZHSKY'S manager and warned her to treat him more appropriately.

37. But HR Manager April DITO, informed Plaintiff that he had to take five weeks of medical leave from work because of his health. Although this leave was supposed to be paid short-term disability, Plaintiff was not paid for this time.

38. Although Plaintiff was supposed to return to work around the end of March, by that time Bloomingdale's had closed because of COVID-19. When the store reopened on about June 22, 2020, Plaintiff called Macy's and asked to return to work.

39. Eventually, on about August 4, 2020, Plaintiff was informed that he could return to work – but SURAZHSKY summarily changed Plaintiff's position from that of a customer-facing fitter/tailor into a simple back-room sewing worker – a considerably less prestigious and less enjoyable menial job.

40. SURAZHSKY'S mistreatment so distressed and upset Plaintiff that he began to suffer from heart palpitations, and was forced to seek medical treatment from a cardiologist at Mt. Sinai hospital, and to take several weeks of medical leave.

41. When Plaintiff reported his medical condition to HR, DITO again urged him to file forms for an unpaid leave of absence, thereby trying to place Plaintiff on involuntary leave.

BLM001217

Plaintiff protested that he felt okay and wanted to resume working – he simply wanted SURAZHSKY to treat him humanely.

42. Most recently, on about September 9, 2020, Plaintiff met with SURAZHSKY and was told that he could either return to work immediately as a sewer or be terminated. Plaintiff was also informed that his designated weekly days off were being changed to Saturday and Sunday, which (SURAZHSKY knows) will interfere in his ability to find child care.

43. Upon information and belief, SURAZHSKY has taken these actions as a form of constructive discharge, attempting to compel Plaintiff to quit his job.

44. Defendants have thus harassed and discriminated against Plaintiff on the basis of his race/ethnicity and national origin, as well as his disability and his requests for medical leave.

45. Upon information and belief, employees with jobs similar to Plaintiff's but who are not Black or African have not been harassed or discriminated against the way Plaintiff has.

46. As a result of SURAZHSKY'S discrimination – and Defendants' repeated failures to remedy or prevent it, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

47. As a result of Defendants' discriminatory mistreatment, or their failure to correct SURAZHSKY'S mistreatment, and their failure to reimburse his medical expenses, Plaintiff has lost at least $30,000.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer loss of income and other compensation, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

49. The above are just some of the examples of the pattern and practice of unlawful,

BLM001218

discriminatory, hostile, and retaliatory conduct to which Defendants or their agents subjected Plaintiff.

50. Plaintiff hereby requests reinstatement to his position.

**FIRST CAUSE OF ACTION**
**TITLE VII – DISCRIMINATION**
**(Not Against the Individual Defendants)**

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

52. Title VII, 42 U.S.C. § 2000e-2(a), states in relevant part as follows: "It shall be an unlawful employment practice for an employer": (1) "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color… or national origin" or (2) "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color…. or national origin."

53. SURAZHSKY repeatedly made racist comments against Plaintiff, telling him "fucking black," and saying: "I don't know why they hire blacks like you" and "I don't know why they would put your picture on the company's website, you're black."

54. SURAZHSKY also denied or impeded Plaintiff's work and ability to earn extra income by preventing him from servicing customers, and she subjected him to discipline; these actions were clearly motivated by racial animus – indeed she said as much.

55. Plaintiff repeatedly complained about SURAZHSKY'S conduct to Defendants' Human Resources staff, yet nothing was ever done to punish SURAZHSKY, prevent future abuse,

8

or otherwise remedy the situation.

56. MACY'S and BLOOMINGDALE'S thereby engaged in discriminatory employment practices prohibited by Title VII and Plaintiff suffered numerous damages as a result, including but not limited to loss of income and benefits, humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

### SECOND CAUSE OF ACTION
### TITLE VII – HOSTILE WORK ENVIRONMENT
### (Not Against the Individual Defendants)

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

58. SURAZHSKY's harassment of Plaintiff was sufficiently severe or pervasive to alter the conditions of Plaintiff's work employment and create an abusive working environment.

59. SURAZHSKY's misconduct may also be imputed to MACY'S and BLOOMINGDALE'S, because Plaintiff repeatedly complained about SURAZHSKY's harassment to Human Resources, yet nothing was ever done to punish SURAZHSKY, prevent future abuse, or otherwise remedy the situation.

60. By encouraging, tolerating, or abetting SURAZHSKY's repeated acts of harassment, MACY'S and BLOOMINGDALE'S created, maintained, and subjected Plaintiff to an unlawful hostile work environment, and Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

BLM001220

## THIRD CAUSE OF ACTION
## TITLE VII – RETALIATION
## (Not Against the Individual Defendants)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

62. Plaintiff complained about SURAZHSKY's unlawful racist and discriminatory conduct and creation of a hostile work environment to Human Resources; thereafter, SURAZHSKY's harassment of Plaintiff only worsened.  SURAZHSKY also changed Plaintiff's position from that of a customer-facing fitter/tailor into a simple back-room sewing worker, and MACY'S and BLOOMINGDALE'S (or their agents) then interfered with or penalized Plaintiff's requests for leave to cope with his ailments.

63. MACY'S and BLOOMINGDALE'S thereby engaged in unlawful retaliation against Plaintiff in violation of Title VII, and Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION
## (Not Against the Individual Defendants)

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

65. Section 102 of the Americans With Disabilities Act provides in pertinent part: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

BLM001221

66. Plaintiff's high blood pressure and heart disease qualify as disabilities under the ADA.

67. The exact number of employees at each entity Defendant is unknown, but upon information and belief, more than satisfies the statutory minimum.

68. On multiple occasions, Plaintiff requested reasonable accommodation of his disability, namely that SURAZHSKY treat him with decency, and/or reasonable short-term paid leave. These requests were either ignored or denied. MACY'S and BLOOMINGDALE'S thereby creating and increasing his heart condition and high blood pressure, and otherwise discriminated against him on the basis of his disability as alleged above.

69. MACY'S and BLOOMINGDALE'S thereby violated the ADA

70. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

### FIFTH CAUSE OF ACTION
### AMERICANS WITH DISABILITIES ACT – RETALIATION
### (Not Against the Individual Defendants)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

72. Section 503 of the Americans With Disabilities Act states: "(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

73. MACY'S and BLOOMINGDALE'S engaged in an unlawful retaliation against Plaintiff in the manner described above, because of his requests for reasonable accommodation of his

BLM001222

disabilities.

74. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

### SIXTH CAUSE OF ACTION
### AMERICANS WITH DISABILITIES ACT – HOSTILE WORK ENVIRONMENT
### (Not Against the Individual Defendants)

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

76. "Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose – the prohibition of illegal discrimination in employment – it follows that disabled Americans should be able to assert hostile work environment claims under the ADA." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019)

77. By knowing about their employees' harassment of Plaintiff for his disability and permitting it to continue as described above, MACY'S AND BLOOMINGDALE'S created, maintained, and subjected Plaintiff to an unlawful hostile work environment in violation of the ADA.

78. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

### SEVENTH CAUSE OF ACTION
### FAMILY AND MEDICAL LEAVE ACT
### (Not Against the Individual Defendants)

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

80. The FMLA states that in general, an employee is entitled to a total of twelve workweeks of

BLM001223

leave in any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

81. Plaintiff had multiple documented serious health conditions that forced him unable to take a medical leave.

82. Nevertheless, MACY'S and BLOOMINGDALE'S refused to provide Plaintiff all of the leave to which he was entitled, so that he could treat his serious health condition.

83. MACY'S and BLOOMINGDALE'S thereby repeatedly violated the FMLA.

84. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**FAMILY AND MEDICAL LEAVE ACT – RETALIATION AND INTERFERENCE**
**(Not Against the Individual Defendants)**

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

86. The FMLA states: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

87. The FMLA further states: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

88. MACY'S and BLOOMINGDALE'S unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempts to exercise his FMLA rights, and discriminated and retaliated

BLM001224

against Plaintiff for opposing Defendants' unlawful employment practices with regard to his attempts to exercise FMLA rights.

89. MACY'S and BLOOMINGDALE'S thereby violated FMLA Section 2615(a).

90. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## NINTH CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW – DISCRIMINATION

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

92. The NYSHRL provides in pertinent part that it shall be an unlawful discriminatory practice for any employer, because of an individual's race, national origin, or disability, to subject that individual "to inferior terms, conditions or privileges of employment." N.Y. Executive Law § 296(1)(h).

93. Each Defendant denied or impeded Plaintiff's work and ability to earn extra income by (in SURAZHSKY'S case) preventing him from servicing customers and subjecting him to discipline – or (with regard to the remaining Defendants) knowingly tolerating such actions.

94. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## TENTH CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW – HOSTILE WORK ENVIRONMENT

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

BLM001225

96. The NYSHRL provides in pertinent part that it shall be an unlawful discriminatory practice for any employer "to subject any individual to harassment" because of that individual's race, national origin, or disability, where such harassment "subjects an individual to inferior terms, conditions or privileges of employment." Further, "[t]he fact that such individual did not make a complaint about the harassment to such employer, licensing agency, employment agency or labor organization shall not be determinative of whether such employer, licensing agency, employment agency or labor organization shall be liable." N.Y. Executive Law § 296(1)(h).

97. By harassing Plaintiff and subjecting him to a hostile work environment because of his race or national origin and disability, or by encouraging, tolerating, or abetting acts of harassment against Plaintiff by other Defendants, each Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment in violation of the NYSHRL.

98. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

### ELEVENTH CAUSE OF ACTION
### NEW YORK STATE HUMAN RIGHTS LAW – RETALIATION

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

100. The NYSHRL provides in pertinent part that it shall be an unlawful discriminatory practice "[f]or any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article." N.Y. Executive Law § 297.

BLM001226

101. Defendants violated this provision and unlawfully retaliated against Plaintiff because of his repeated objections to and complaints about SURAZHSKY's unlawful harassment described above.

102. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## TWELFTH CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW – AIDING AND ABETTING

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as though fully set forth herein.

104. The NYSHRL provides in pertinent part that it shall be an unlawful discriminatory practice "[f]or any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."  N.Y. Executive Law § 296(6).

105. Each Defendant violated this provision by aiding, abetting, inciting, compelling, or coercing the unlawful discrimination or retaliation carried out by the other Defendants as described above.

106. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## THIRTEENTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW – DISCRIMINATION

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

108. The NYCHRL makes it an "unlawful discriminatory practice" for any "employer or an

employee or agent thereof" to discriminate in terms, conditions, or privileges of employment on the basis of race or national origin. N.Y.C. Admin. Code § 8-107(1).

109. To prevail on a NYCHRL discrimination claim, an employee need only show "differential treatment" – that he was "treated less well" because of a discriminatory intent, whether through a "tangible" employment action such as firing, or through workplace harassment, which need not be "severe or pervasive." *Forrester v. Corizon Health, Inc.*, 278 F. Supp. 3d 618, 625-26 (E.D.N.Y. 2017), *aff'd*, 752 Fed. App'x 64 (2d Cir. 2018).

110. Defendants violated the NYCHRL by tolerating or encouraging the harassment of Plaintiff on the basis of his race/national origin, demoting him, and ultimately constructively discharging him, as set forth herein.

111. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## FOURTEENTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW – RETALIATION

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

113. The NYCHRL makes it an "unlawful discriminatory practice" for any employer to "discriminate against any person because such person has opposed any practices forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7).

114. Defendants violated this provision by discriminating against, harassing, demoting, and constructively discharging Plaintiff because he complained about the harassment described above.

115. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional

17

distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## FIFTEENTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW – INTERFERENCE

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

117. The NYCHRL makes it an "unlawful discriminatory practice" for "any person" to "coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section." N.Y.C. Admin. Code § 8-107(19).

118. By harassing, demoting, and constructively discharging Plaintiff, Defendants coerced or interfered with Plaintiff's enjoyment of his rights under the NYCHRL.

119. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

## SIXTEENTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW – AIDING AND ABETTING

120. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

121. The NYCHRL makes it an "unlawful discriminatory practice" for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." N.Y.C. Admin. Code § 8-107(6).

122. As described above, each Defendant violated this provision by aiding, abetting, inciting,

BLM001229

compelling, or coercing the harassing and retaliatory conduct described above.

123. Plaintiff suffered compensable damages as a result, including humiliation, severe emotional distress, and even physical ailments including high blood pressure and heart disease, in amounts to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:   New York, New York
         December 18, 2020

                                        DEREK SMITH LAW GROUP, PLLC

                                By:     /s/ Daniel S. Kirschbaum
                                        Daniel S. Kirschbaum, Esq.
                                        One Penn Plaza, Suite 4905
                                        New York, New York 10119
                                        dsk@dereksmithlaw.com
                                        (212) 587-0760

                                        *Attorneys for Plaintiff*

BLM001230