UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTINA MIKHAYLOVA,<br><br>               *Plaintiff,*<br><br>  v.<br><br>BLOOMINGDALE'S, INC., BLOOMINGDALE'S, INC. d/b/a BLOOMINGDALE'S AND FORTY CARROTS, BLOOMINGDALE'S, LLC, BLOOMINGDALE'S, LLC d/b/a BLOOMINGDALE'S NEW YORK, MACY'S, INC., MACY'S, INC. d/b/a MACY'S OF NEW YORK, UNITED STOREWORKERS RETAIL, WHOLESALE AND DEPARTMENT STORE UNION AFL-CIO LOCAL 3 a/k/a LOCAL 3 UNITED STOREWORKERS RWDSU/UFCW, DENNIS DIAZ, individually, CHRISTOPHER CASTELLANI, individually, RICHARD LAW, individually, and BOBBY BOOKER, individually,<br><br>               *Defendants.* | Case No. 1:19-cv-08927-GDB-SLC |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

                      **BARTON GILMAN LLP**
                      165 Passaic Avenue, Suite 107
                      Fairfield, New Jersey 07004
                      Telephone: (973) 256-9000
                      Email:  sgerber@bglaw.com

                      **MACY'S, INC. LAW DEPARTMENT**
                      11477 Olde Cabin Rd., Suite 400
                      Creve Coeur, Missouri 63141
                      Telephone: (314) 342-6728
                      Email: betty.tierney@macys.com

                      *Attorneys for Defendants, Bloomingdale's, LLC, Macy's, Inc. and Christopher Castellani*

*On the Brief*:
Betty Thorne Tierney, Esq.
Steven Gerber, Esq.

# TABLE OF CONTENTS

FACTUAL ISSUES ...........................................................................................................................1

LEGAL ARGUMENT .....................................................................................................................2

No Evidence of Pregnancy Discrimination......................................................................................2

Reasonable Accommodation............................................................................................................5

Chris Castellani Should Be Dismissed From this Action ................................................................6

Miscellany........................................................................................................................................7

      No Inconsistent Reasons for Termination............................................................................7

      Plaintiff Made No Complaints of Discrimination................................................................8

      Progressive Discipline Was Not Required ..........................................................................9

      Policy Changes....................................................................................................................9

      No Manager Rang Any of the 26 Out of State Transactions...............................................9

      Tax Case is Distinguishable ................................................................................................9

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bloomingdale's Bros., Div. of Federated Dep't Stores, Inc. v. Chu*,
    513 N.E.2d 233 (NY Ct. App. 1987)*,*
    *cert. denied*, 534 U.S. 993 (2001)................................................................................9, 10

Plaintiff's memorandum in opposition to Defendants' motion is submitted almost as a stream of consciousness, making Plaintiff's arguments practically indecipherable. Critically, the arguments are not tied to any specific claim, making it almost impossible to determine the basis of Plaintiff's opposition from the papers submitted. However, Defendants will address the unclear mass arguments contained in Plaintiff's memorandum, and the significant concerns with Plaintiff's alleged facts in opposition.

## **FACTUAL ISSUES**

There are significant issues with understanding the relevance of many facts set forth by Plaintiff. In response to Defendants' moving papers, Plaintiff presents one-hundred and twenty-four (124) "new" facts. The majority of these purported "new" facts are irrelevant, duplicative, or information previously submitted by the parties. For instance, Plaintiff added eleven "new" facts discussing three unrelated cases filed in the Southern District of New York years ago and one attorney demand letter. These materials have no factual relevance to the pending action, and consist of only unproven allegations (although one of the cases was dismissed on summary judgment). Plaintiff also sets forth at least four of her "new" facts to discuss Defendants' email retention policy, which are wholly irrelevant given that Plaintiff's brief fails to shed light on how the email retention policy factors into this action.

Another important issue with Plaintiff's opposition is that she routinely misstates the record. Generally, the recitation of the testimony supporting a fact will be the same, but Plaintiff will change a word or two to alter the very meaning of the citation. Other stated facts are quotes taken from deposition testimony that make little sense as they are not presented in context and, on occasion, are incomplete thoughts. In short, Plaintiff's responsive facts to Defendants' Statement of Undisputed Facts ("SUF") and "new" facts fail, for the most part, to demonstrate inconsistencies and/or factual disputes, and any arguable disputed fact is either irrelevant or immaterial. As the

1

Court will see, Defendants were required to spend great effort and time addressing the mischaracterized evidence and irrelevant facts so that the Court has access to the true record. A review of the accurate record demonstrates that there is no material dispute of fact and summary judgment in favor of Defendants is appropriate on all counts.

## LEGAL ARGUMENT

### No Evidence of Pregnancy Discrimination

Plaintiff's overarching argument is that the company orchestrated a months' long fraud investigation, that admittedly involved the NYPD, in an effort to discharge the Plaintiff because she was pregnant and requested intermittent leave. Yet, it is undisputed that Bloomingdale's suffered a loss of over $1 million in the Chanel handbag department at 59th Street in 2017 due to fraud. The investigation took nearly a year to complete, resulting in termination of several employees. Plaintiff was let go in June 2017 at the beginning of the investigation.

Despite Plaintiff's absurd arguments, there is no evidence even suggesting that the fraud investigation was a ruse to develop information against Plaintiff. Months after Plaintiff was discharged and during the fraud investigation, several employees implicated Plaintiff in diversion. Plaintiff admitted that there were five employees who were implicated in over $722,000 of fraudulent transactions out of $1.1 million in total losses. SUF ¶¶ 63, 156-159. The summary notes of the investigation state that the employees implicated in the fraud scheme were also engaging in diversion and mailing merchandise out of the state to avoid taxes. Plaintiff Ex. 10, bates BLM 1554-1555. The employees engaging in the fraud were discharged or resigned when questioned.

It has not been proven definitively that Plaintiff was part of the fraud but she engaged in behavior that was extremely suspicious. Plaintiff had the highest fraud sends (mailed purchases) in the company in January and February 2017. SUF ¶¶ 65, 78. She purchased over $264,000 of Chanel merchandise from October 2016 to June 2017 without any obvious means of paying that

amount of money for 46 purses, 29 pairs of shoes and other expensive merchandise. Steven Gerber Decl., Ex. K. Plaintiff also sent at least 26 separate transactions of merchandise to someone the Asset Protection team believed to be a known diverter. Becker Decl., Ex. G; Castellani Dep., p. 64:1-17. Plaintiff admitted she mailed the product out of state to avoid New York taxes. At least two of the employees engaged in the fraud implicated Plaintiff as the person who gave them the address for mailing product. SUF ¶¶ 127-128. While Plaintiff alleged some of the purchases were for gifts, she did not mail the merchandise to the gift recipients but instead to a UPS Store with different names, including mailing some to a company. Becker Decl., Exs. F and G. These facts provide more than sufficient basis to legally terminate Plaintiff's employment.

Critically, the record is devoid of any evidence that Plaintiff's suspension and termination had anything to do with her pregnancy or request for accommodation. Based on her doctor's note, and undisputed by Plaintiff, she was approximately 2.5 to 3 months pregnant at the beginning of June 2017. SUF ¶ 37. She alleges – without evidentiary support – that she was visibly pregnant. However, the investigator, Chris Castellani, and his supervisor, Fred Becker, both stated they had no knowledge that Plaintiff was pregnant during the investigation. They also did not know at the time of the investigation that she had requested intermittent leave or needed any other accommodation. Indeed, Plaintiff admits as to Becker's statement on this point.

The only argument Plaintiff offers to oppose the statement by Castellani is that she was visibly pregnant 2.5 to 3 months into her pregnancy and saw Castellani at work. SUF ¶¶ 90-91. There is no evidence, however, to support this self-serving statement. It is undisputed that there were over 2000 employees and 11 floors in the 59th Street Store. SUF ¶ 60. Even if there was evidence that Castellani saw Plaintiff during the work day, which there is not, there would still be no proof that he was aware that Plaintiff was pregnant. Of note, there is no evidence presented by

3

Plaintiff to prove any change in her appearance between the first interview with Castellani in February 2017 and June 2017.

Richard Law, the decision maker in this case, also did not know anything about Plaintiff's pregnancy until she asked him, during her suspension, if her pregnancy was playing a role in the investigation. The request for leave was handled by the Leave of Absence ("LOA") office in Florida, so Law was not aware of any requests for leave or accommodation. Accompanying Declaration of Juana-Marie Lippman ("Lippman Decl.") ¶ 2; SUF ¶ 88. Plaintiff challenges this assertion by stating that she saw Law when she submitted her FMLA paperwork. There is no evidence that Law saw Plaintiff in human resources, or that he would know why she was there. Plaintiff testified she spoke to an unidentified woman, not Law, while in human resources. She could also not recall if she ever spoke to Law before the issues with her termination Plaintiff's Dep., pp. 90:19-92:19; 111:16-20 (Ex. A to moving Gerber Decl.). Plaintiff alleges in her declaration that she also saw Law regularly at work and she was visibly pregnant. Again, Plaintiff's commentary as to what another individual might be able to see or conclude is a hypothetical exercise and wholesale speculation, not facts or evidence.

Plaintiff was not treated differently. Despite her arguments to the contrary, there is no one who admitted tax evasion as part of their violations of policy who was not discharged or who, upon resigning when interviewed, was not designated as not rehireable. While Plaintiff makes comparison to Tyler Rose, they were not similarly situated as he did not admit tax evasion. While he mailed merchandise to the same person as Plaintiff once (compared to 26 times for Plaintiff), he alleged she was a friend. Given this was a one-time occurrence, there was no evidence to refute Rose's statements and Law did not feel he had enough information to fire Rose.  SUF ¶ 126.

The fact remains that even if Law or Castellani knew Plaintiff was pregnant or requested a leave, there is absolutely no evidence to tie that to the investigation which was initiated by MCCS

4

personnel located in Ohio and her eventual termination for her admitted policy violations. SUF ¶¶ 65-66, 79. Law made decisions as to Plaintiff's discharge based on her admissions and his reasonable belief that she was a diverter. SUF ¶¶ 86, 96.[1]

**Reasonable Accommodation**[2]

Plaintiff was fully accommodated. The undisputed fact is that Plaintiff produced only one doctor's note in this litigation. In that note, the doctor stated that Plaintiff was suffering from morning sickness and "vomiting and feeling dizzy," and would therefore need approximately one time per week for up to two hours per episode to address that issue. This was the only medically requested accommodation that Plaintiff submitted. Her request for intermittent leave to address these issues was granted. SUF ¶ 35; Lippman Decl., ¶¶ 8-9.

Surprisingly, Plaintiff seems to suggest she was "forced" to take leave, but Plaintiff voluntarily completed the paperwork for the leave. Additionally, intermittent leave is designed to aid employees who need periodic respites from work to deal with medical issues. It is unclear what other accommodation Plaintiff deems appropriate but Bloomingdale's is required by law to provide an accommodation that meets her restrictions, not one that necessarily meets her desires. Bloomingdale's provided such an accommodation. Also, it took time for Plaintiff to request her leave and obtain approval. During that time, she was tardy or absent eleven times and received no further disciplinary action. This too was an accommodation. SUF ¶ 31.

The only "disputed" issues that Plaintiff has raised on this claim is that one document in Defendants' production referred to the leave being "cancelled" and the fact that Plaintiff received

---

[1] Plaintiff alleges she was replaced by a male, Zaid Constantine. The evidence does not support this as Denis Diaz testified that Constantine did not replace Plaintiff. SUF ¶ 245.

[2] Plaintiff incorrectly contends Defendants use the wrong elements for its accommodation analysis. Plaintiff's elements are guided towards a failure to engage in interactive dialogue but the gist is the same: Plaintiff needed an accommodation; the employer was required to provide an accommodation; the employer was on notice of the need; and the employer refused without a valid reason. Defendants' Moving Brief, p. 12.

two letters on June 9 – one stating her leave was approved and one stating she needed to provide medical certification for her need for leave. However, Plaintiff admitted that her intermittent leave request was approved. SUF ¶ 35.

These issues are readily addressed in the Lippman Decl. Plaintiff's leave was originally requested with a May start date. However, after receiving the doctor's note stating the issues began in April, the initial leave was cancelled and a new leave request was opened to move the date back to April. The second leave request was approved as noted on "Exhibit H" to the moving Cox Decl. and in the Lippman Decl. Lippman notes that if a leave is not granted, it is noted as Denied not Cancelled. Lippman Decl., ¶¶ 9, 14.

As for the two letters, a letter was sent noting the second leave request that was opened in April was approved. However, as it was a new leave request, the system automatically sent out a new leave packet with the certification form and request. Of note, the letter for the medical request on June 9, 2017 also stated that a medical certification should be submitted *if one had not already been completed*. Lippman Decl., ¶¶ 10-11.

While Plaintiff's opposition is confusing in many ways, what is clear is that Plaintiff is adopting the position that she should have been insulated from termination for a policy violation because she was pregnant. There is no statute, caselaw or mechanism which stands for this proposition, and the law is clear that an employee on leave who violated or violates policy can be discharged as long as the leave is not a reason for the discharge.

**Chris Castellani Should Be Dismissed From this Action**

As shown by the evidence, Castellani completed an investigation into Plaintiff's behavior and conduct that was ultimately submitted to human resources. He was not involved in the termination or provision of an accommodation, nor did he harass Plaintiff. Under the undisputed facts, Castellani should be dismissed from this case as a matter of law.

Plaintiff's only opposition to Castellani's dismissal is one line in her brief that she has provided sufficient evidence of a triable issue as to whether Castellani "actually participated" in the conduct leading to her claims. Plaintiff Opposition Brief, p. 8. Her opposition is simply not supported by the evidence. SUF ¶¶ 89, 92. Plaintiff's only argument in response to SUF ¶ 92 is that Castellani forwarded his findings to human resources. This, of course, was his duty as an Asset Protection employee. There is no evidence that he conducted the investigation for any reason other than the reasonable belief that Plaintiff was violating company policy. There is also no evidence that discriminatory animus played any role in his good faith actions. All claims against Castellani should be dismissed as a matter of law.

**Miscellany**

In Plaintiff's brief, there are several arguments that are limited to one sentence unaccompanied by any explanation. These arguments are succinctly addressed below.

<u>No Inconsistent Reasons for Termination:</u> There have not been inconsistent reasons given for Plaintiff's termination. Richard Law explained that the termination was for several reasons. Plaintiff violated several policies. She clearly exceeded the purchase amounts. Chanel employees were limited to a maximum of 24 bags per year and no more than 4 per month since there was a limited number of the Chanel bags available for sale and the company wanted them to be available for customers. Plaintiff herself emphasizes this in her declaration. Plaintiff Decl., ¶ 15. Plaintiff bought approximately 46 bags in eight months (October to April), far exceeding the permissible amount. SUF ¶¶ 100-103.

Plaintiff's challenge to this is that bags purchased on sale did not count towards the limit stated in the policy. Younis explained that liquidation sales were usually one or two times per year and only included bags that were slightly damaged, older or had not sold. The receipts would show the discount as it would be taken at the register. SUF ¶¶ 117-118. Even if Plaintiff's statement was

7

true, Plaintiff has no receipts or other evidence that the 46 bags she purchased were bought at a liquidation sale.

Plaintiff also alleges there was no limit on the number of pairs of shoes that could be purchased but the employee handbook clearly stated no more than 12 of any category of merchandise in a 90 day period could be purchased. SUF ¶ 108. This is a diversion prevention policy. The only exceptions to this policy are set out in the handbook – Cosmetics, Chanel handbags and home goods like towels and socks. Against policy, Plaintiff bought 29 pairs of shoes.

Law also believed Plaintiff was a diverter. This was reasonable since: she bought so much merchandise (he thought it was $65,000 but did not have access to her credit card statements – it was actually $264,000); she sent 26 transactions out of state to avoid taxes; the items were addressed to numerous people (including herself) and a company called Polagrains America; and all but one purchase was delivered to a UPS Store in New Hampshire. SUF ¶¶ 81-82, 86, 96-100, 102.

Finally, Plaintiff admitted to purposefully evading taxes. It is understandable that Defendants do not want to be involved in such conduct, and the Code of Conduct requires adherence to all laws. SUF ¶¶ 16. 81, 123. Nothing in this case suggests Plaintiff's termination was a result of anything but this mass of policy violations.

<u>Plaintiff Made No Complaints of Discrimination:</u>  Plaintiff alleges she made a complaint of discrimination when she filed her union grievance and when she asked Richard Law by email if her pregnancy played a role in her suspension. The union grievance document submitted by Plaintiff does not mention that her termination had anything to do with her pregnancy. As for the question to Law, that was not a complaint. Law knew how the investigation began and responded appropriately that Plaintiff's pregnancy had nothing to do with the situation. Plaintiff Ex. 12, Bates Mikhaylova 185 (page 18 of exhibit) and SUF ¶ 85.

There is also no indication that anyone in Asset Protection was aware the grievance document had been filed, which contradicts Plaintiff's theory that there was a connection between the grievance filing and fraud investigation in the Chanel department. Similarly, there is no indication the company ever considered bringing Plaintiff back, nor is there any information as to who ultimately denied the grievance.

Progressive Discipline Was Not Required: The employee handbook makes clear that progressive discipline is not mandatory if the company determines conduct to be sufficiently egregious to warrant immediate termination. In the handbook attached to Plaintiff's "Exhibit 10," it states that violation of the discount policy is grounds for immediate termination. Ex. 10, BLM47-49. The document continues to state the company may terminate an employee's employment without going through a warning process. The discount policy attached to Courtney Cox's declaration also states that violation of the discount policy may result in termination. Cox Decl., Ex. D.

Policy Changes: After Chanel became a leased department, Chanel's policies regarding mailing of merchandise became even stricter. For example, there were states that employees could not send a package to without a valid driver's license showing residence. This does not prove that employees were allowed to evade taxes when it was an owned department. Chanel simply had stricter policies.

No Manager Rang Any of the 26 Out of State Transactions: The 26 out of state receipts that were central to the investigation leading to Plaintiff's termination were all rung by hourly or commission employees. They were not rung by managers. Specifically, neither Denis Diaz and Cathy Younis rang any of the twenty-eight transactions, including those involving Plaintiff. Accompanying Supplemental Declaration of Courtney Cox, ¶¶ 4-6.

Tax Case is Distinguishable: *Bloomingdale's Bros., Div. of Federated Dep't Stores, Inc. v.*

9

*Chu,* 513 N.E.2d 233 (NY Ct. App. 1987) is distinguishable from this situation. In that case, the New York State Tax Commission assessed sales tax on Bloomingdale's for gift purchases made by residents of states outside New York at Bloomingdale's locations outside of New York. Bloomingdale's had the merchandise delivered to recipients in New York by common carrier. The Court of Appeals overturned the Commission's decision that Bloomingdale's owed New York taxes for the out of state purchases that were sent to New York. The basis for this holding was that the transaction was completed outside of New York. The only connection to New York was the final recipient. *Id.* at 234-35. The Court of Appeals held Bloomingdale's was not responsible for the taxes. Of note, however, this case demonstrates that if Bloomingdale's does not properly collect sales tax, it can be responsible for paying the amounts due. The court in *Chu* clearly noted it was not encouraging tax avoidance schemes. *Id*. at 235. That is a further basis for the termination decision in this case. This case does not aid Plaintiff's arguments.

## CONCLUSION

For all of the foregoing reasons, Defendants Macy's, Inc., Bloomingdale's, LLC (formerly Bloomingdale's Inc.) and Chris Castellani respectfully urge that the Court grant their motion for summary judgment in its entirety.

Respectfully submitted,

By:   /s/ Steven Gerber
Steven Gerber
BARTON GILMAN
165 Passaic Avenue, Suite 107
Fairfield, New Jersey 07004
Telephone: (973) 256-9000
Email:  sgerber@bglaw.com

By:   /s/ Betty Thorne Tierney
Betty Thorne Tierney (admitted *Pro Hac Vice*)
MACY'S, INC. LAW DEPARTMENT
11477 Olde Cabin Rd., Suite 400

10

Creve Coeur, Missouri 63141
Telephone: (314) 342-6728
Email: betty.tierney@macys.com

*Attorneys for Defendants, Bloomingdale's, LLC, Macy's, Inc. and Christopher Castellani*

Dated: October 3, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused to be served via CM/ECF, a true and correct copy of the foregoing Defendants' Reply in Support of their Motion for Summary Judgment on:

> Melissa Mendoza, Esq.
> Derek Smith Law Group PLLC
> 1 Penn Plaza, Suite 4905
> New York, NY 10119
> *Attorney for Plaintiff, Kristina Mikhaylova*

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

 /s/ Steven Gerber
Steven Gerber

Dated: October 3, 2023