**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------- x

KRISTINA MIKHAYLOVA,

Plaintiff,

-against-

BLOOMINGDALE'S, INC., BLOOMINGDALE'S, INC. d/b/a BLOOMINGDALE'S AND FORTY CARROTS, BLOOMINGDALE'S, LLC, BLOOMINGDALE'S, LLC d/b/a BLOOMINGDALE'S NEW YORK, MACY'S, INC., MACY'S, INC. d/b/a MACY'S OF NEW YORK, CHRISTOPHER CASTELLANI, individually, AND RICHARD LAW, individually,

Defendants.

---------------------------------- x

MEMORANDUM DECISION AND ORDER

19 Civ. 08927 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Kristina Mikhaylova brings this eighteen-count action against her former employer and its affiliates—Bloomingdale's, Inc.; Bloomingdale's, Inc. d/b/a Bloomingdale's And Forty Carrots; Bloomingdale's, LLC; Bloomingdale's, LLC d/b/a Bloomingdale's New York (collectively, "Bloomingdale's"); Macy's, Inc. and Macy's, Inc. d/b/a Macy's Of New York (together, "Macy's")—and individuals Christopher Castellani, a Loss Prevention Manager (together with Bloomingdale's and Macy's, "Defendants"), and Richard Law, a Human Resources Manager. As to Bloomingdale's and Macy's, Plaintiff alleges pregnancy and/or sex-based discrimination, retaliation, hostile work environment, failure to accommodate, and interference with protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), the New York City Administrative Code § 8-107 ("NYCHRL"). (Amended Complaint ("FAC"), ECF No. 21, ¶¶ 110–193.) For the individual defendants, Plaintiff only asserts its claims arising under NYSHRL and NYCHRL. (*Id.*)

Before this Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of all of Plaintiff's claims. (Defs.' Mot. For Summ. J., ECF No. 104.) Defendants' motion is GRANTED.[1]

## I. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff began working for Bloomingdale's as a sales employee in the Chanel Handbag Department at their 59th street location on or around the beginning of May 2016. (Joint Statement of Undisputed Material Facts ("Joint SUMF"), ECF No. 137, ¶ 1.) Plaintiff signed a "Statement of Awareness" as part of her onboarding process acknowledging that Bloomingdale's had policies (1) outlawing selling to known resellers, (2) limiting general merchandise purchases to 12 units per merchandise category within 90 days, and (3) limiting purchases of Chanel handbags to four per month and no more than 24 per year. (Gerber Decl. in Support of Defs.' Mot. for Summ. J., ("Gerber Decl."), ECF No. 107, Ex L; Ex. M at BLM000380.) Plaintiff acquired a credit account with Bloomingdale's with which she purchased merchandise sold at Bloomingdale's and received an employee discount on

[1] A review of the docket and record in this case indicates that Plaintiff has not served Defendant Law with the FAC as of the date of this Memorandum Decision and Order. Federal of Civil Procedure 4(m) dictates that a plaintiff must properly serve a defendant within 120 days of filing a complaint. When a plaintiff fails to do so, the court must "dismiss the action without prejudice as to that defendant or direct that service is effected within a specified time." *Id.* Plaintiff's 120-day deadline has long passed as she filed the FAC in January 2020. Accordingly, this Court dismisses Plaintiff's claims as to Defendant Law for a failure to timely serve.

each purchase. (*See* Gerber Decl., Ex. K.) This credit account was subject to Bloomingdale's discount policy, which forbid (among other things) purchasing an item and receiving reimbursement by another. (Decl. of Becker in Support of Defs.' Mot. for Summ. J., ("Becker Decl."), ECF No. 108, Ex. I at BLM002041.)

Plaintiff experienced tardiness issues in January 2017, with seven documented instances of tardiness in January alone. (Joint SUMF ¶ 23.) Plaintiff became pregnant at some point between February 15 and March 15 in 2017. (*Id.* ¶ 37.)

In February 2017, Bloomingdale's Central Asset Protection group learned through Macy's Credit and Customer Service division, which manages Bloomingdale's branded credit card, that Plaintiff had rung up over $67,000 of fraudulent "send" transactions in just five days. (*Id.* ¶ 65.) "Send" transactions are orders made by phone and then shipped to customers. (*Id.*) Plaintiff used what is referred to as the memo order process to process these transactions, whereby Plaintiff manually completed a form with the customer's name, the address where the merchandise was to be shipped, the merchandise ordered, and the credit card information. (*Id.* ¶¶ 72, 75.) Castellani was an Asset Protection Manager and investigated the issue, leading to an interview with Plaintiff to determine whether she followed Bloomingdale's policies and process for administering send orders. (*Id.* ¶ 68.) Castellani confirmed that Plaintiff had in fact completed the memo orders for the $67,000 sales in question, and because Bloomingdale's did not uncover any evidence of collusion, no further action was taken. (*Id.* ¶ 76.)

This was the first of three instances where Bloomingdale's and/or Macy's flagged Plaintiff for suspicious activity related to fraud or policy breaches over the course of Plaintiff's thirteen-month employment. (*Id.* ¶¶ 1–2, 63–65, 75–83.) These occurrences overlapped with Bloomingdale's significant issue with fraud in the department in which plaintiff worked—the

Chanel Handbag department had approximately $1 million worth of fraudulent transactions in 2017. (*Id.* 63.)

Plaintiff's issues with tardiness continued, resulting in a "Formal Reminder" meeting on April 19 for her three documented tardies in March. (*Id.* ¶ 24.) Plaintiff told her supervisor, Diaz, that she was pregnant sometime after this meeting. (*Id.* ¶ 26.) Diaz responded by "congratulat[ing] Plaintiff and directed her to human resources for any assistance she might need including a leave and/or accommodation." (*Id.*) Plaintiff requested intermittent leave in relation to her pregnancy in mid-May, but did not submit the requisite doctor's certification until June 2, which was approved on June 9. (*Id.* ¶ 35.) The doctor's certification stated that Plaintiff was experiencing morning sickness, manifesting in vomiting, dizziness, and nausea, and that Plaintiff may need up to two hours to address her nausea and vomiting once per week for six months. (Decl. of Cox in Support of Defs.' Mot. for Summ. J., ("Cox Decl."), ECF No. 109, Ex. G.) It appears that on June 14, the allotted frequency was increased from one to up to five times per week. (Decl. of Mendoza in Support of Opp'n. to Mot. for Summ. J., ("Mendoza Decl."), ECF No. 129, Ex. 10 at BLM000793.) Plaintiff's doctor did not request any further accommodation. (*See* Cox Decl., Ex. G; Joint SUMF ¶ 36.) Although Plaintiff was tardy 11 more times (and had one absence) following the "Formal Reminder," Plaintiff did not receive any further write ups or discipline. (Joint SUMF ¶ 31.)

The second flagging of Plaintiff occurred sometime in April, when Castellani was made privy to additional red flags raised associated with Plaintiff's Bloomingdale's credit account. (Becker Decl., Ex. E at 1903–1912; Joint SUMF ¶¶ 78–79.) Plaintiff was suspected of violating Bloomindale's employee discount policy and improperly reselling through her family in connection with over $65,000 worth of purchases on her credit account. (*Id.* ¶¶ 79–80; Becker

Decl., Ex. D at BLM001491.) Castellani scheduled an interview for June 6 to investigate this further. (Becker Decl., Ex. D at BLM001491.) But before the date of this interview, the third flagging occurred. (*See* Joint SUMF ¶ 78.) On June 1, the Asset Protection division received a second notice stating that Plaintiff had over $90,000 of fraudulent send orders in 2017—the highest amount for all of Macy's and Bloomingdale's up to that point. (*Id.*) This amount more than tripled the second highest amount of $27,000. (*Id.*)

During the June 6 interview, Plaintiff admitted in a written statement to purposeful tax evasion in relation to 26 purchases[2] amounting to about $65,000 worth of product (Becker Decl., Ex. F at BLM001894, BLM001898; Ex. G at BLM001924–BLM001951.) She claimed that she purchased the items for herself and as gifts for others and shipped them out of state to avoid New York State taxes. (Becker Decl., Ex. F at BLM001894.) Plaintiff shipped 24 of these purchases to the same street address in New Hampshire and one to Mississippi. (Becker Decl., Ex. G at BLM001924–51.) The New Hampshire address was associated with a UPS Store box number. (Joint SUMF ¶ 98.) Two other employees, Martha Weh and Tyler Rose, also mailed merchandise to this New Hampshire address. (*Id.*¶ 126.) Weh was responsible for numerous transactions and had no basis for claiming they were for personal use or a gift; Rose was responsible for one transaction. (*Id.*; Mendoza Decl., ECF. No. 131, Ex. 10 at BLM001576–77.) Defendant Law fired Weh, but only suspended Rose. (Joint SUMF ¶ 126; Mendoza Decl. ECF. No. 131, Ex. 10 at BLM001577.) In contrast to Plaintiff, Rose did not admit to purposeful tax evasion. (Mendoza Decl., ECF No. 131, Ex. 10 at BLM001576–77.) The record bears evidence that other employees who mailed product to this same New Hampshire address have stated that they were working with

[2] For clarity purposes, "26 purchases" is not a reference to the number of items purchased; rather, each purchase comprised at least one bought item and often contained more.

a diverter/reseller and implicated Plaintiff as the person who got them involved. (*Id.* Ex. 21 at BLM002193–94, BLM002213–14.)

Defendant Law suspended Plaintiff the day of the June 6 interview and terminated her on June 16. (Joint SUMF ¶¶ 81–84.) Defendant Law summarized his bases for terminating Plaintiff in the following sworn testimony: "[A] large part of my decision [to fire Plaintiff] was based upon the discount abuse and going over the purchase limits. And as I might have stated previously, the tax portion evasion may have played a part in it but I don't recall specifically." (Gerber Decl., Ex. B at 86:12–17.) An internal investigation report detailing Bloomingdale's investigation into Plaintiff's conduct lists "Employee Fraud – Termination" and "Employee Account Abuse - Termination" as the primary and secondary case types associated with the investigation. (Gerber Decl., Ex. Y at BLM001896.) Plaintiff testified in a deposition that Defendant Law cited Plaintiff "buying too many shoes and handbags" and "avoiding tax" as the bases for her firing. (Gerber Decl., Ex. A at 143:22–144:11.)

Notably, Plaintiff spent over $264,000 on merchandise from October 2016 through June 2017. (*See* Gerber Decl., Ex. K.) Defendants have proffered Plaintiff's credit account statements as evidence that Plaintiff's purchases violated Bloomingdale's purchase limit and employee discount policies, claiming these statements show that Plaintiff "bought over 46 Chanel handbags and over 29 pairs of shoes" from October 2016 through April 2017. (*Id.*; Joint SUMF ¶ 101.) Plaintiff disputes the accuracy of these figures, but fails to offer her own numbers representing the purchases. She claims that Defendants' figures are "not supported by any materials in the record."

(Joint SUMF ¶ 101; *but see* Gerber Decl., Ex. K.) Plaintiff's counter argument is that her pregnancy must have been the reason for her termination.

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quotation omitted). Alternatively, a movant may succeed by showing the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*, 477 U.S. at 322. Such a showing entitles the movant to a judgment as a matter of law, because no genuine dispute of material fact can exist "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

The movant has the burden of demonstrating that no genuine issue of material fact exists. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the nonmovant must raise a genuine issue of material fact. *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted). Instead, the opposing party must produce "hard evidence," *D'Amico v. City*

*of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). In this regard, "[t]he mere existence of a scintilla of evidence supporting the non-movant's case is . . . insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quotation omitted). In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the nonmovant and draw all inferences in its favor. *Id.*

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

Plaintiff brings eighteen causes of action under federal, state, and city law for pregnancy and/or sex-based discrimination, retaliation, hostile work environment, interference with protected rights, aid and abet, and failure to accommodate. (FAC ¶¶ 46–104.)

Defendants move for summary judgment on all of Plaintiff's claims. Their primary arguments are that (1) Plaintiff cannot meet her prima facie burden of establishing that her adverse employment actions occurred under circumstances giving an inference of discrimination because Plaintiff's termination was based on her impermissible conduct and violation of multiple policies, (Defs.' Mem. of Law in Support of Mot. for Summary J., ("Defs.' Mem."), ECF No. 106, at 6, 10), (2) Plaintiff cannot point to an accommodation Defendants refused to make, (*id.* at 12–13), (3) Plaintiff's hostile work environment allegations are speculative and insufficient as a matter of law, (*id.* at 15), (4) Plaintiff was granted FMLA leave and has failed to point to any FMLA-related interference or violation, (*id.* at 16–17), and (5) any secondary or individual liability theory, including aiding and abetting, supervisory liability, and individual liability as to Castellani fail because the anchor liability theories fail and/or Plaintiff has failed to adduce sufficient evidence as a matter of law, (*see, e.g.*, *id.* at 24.)

Plaintiff's Opposition has failed to respond to a number of Defendants' arguments or has otherwise omitted any mention of many of her claims. It is axiomatic that when a plaintiff "fails to address the defendants' arguments against or even mention several of his or her claims, those claims are deemed abandoned." *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 110 (S.D.N.Y. 2022) (cleaned up) (collecting cases). Therefore, this Court finds that Plaintiff has abandoned the following Causes of Actions: Two (hostile work environment under Title VII), Three (retaliation under Title VII), Five (retaliation under the ADA), Six (FMLA violation), Seven (retaliation and interference under the FMLA), Nine (hostile work environment under the NYSHRL), Ten (retaliation under the NYSHRL), Thirteen (retaliation under the NYCHRL), and Fifteen (interference with protected rights under the NYCHRL).

Plaintiff's Opposition is manifestly incoherent, riddled with incomplete arguments and sentences. It lacks necessary citations to the record. *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir. 2002) (advising that the court "need consider only the cited materials," and has no obligation "to perform an independent review of the record to find proof of a factual dispute"). Its argument section only contains *one* (incomplete) heading—"Plaintiff Has Established As Matter Of Law"—and no subheadings for an eighteen-count complaint. It largely fails to delineate which of Defendants' arguments—or even which of Plaintiff's own claims—it is discussing.

**A. Discrimination Under Title VII, the ADA, and the NYSHRL**

Plaintiff's First, Fourth, Eighth, and Twelfth Causes of Action allege that Defendants discriminated against her on the basis of sex, status as a pregnant person, and/or her disability related to her pregnancy in violation of Title VII, the ADA, and the NYSHRL. For these claims, Plaintiff must first establish a prima facie case of discrimination, and if successful, the burden of

production shifts to Defendants under the *McDonnell Douglas* framework. *See Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 491 (2d Cir. 2010). Here, however, Plaintiff has failed to meet her initial burden of establishing the fourth element of her claim, negating any need for a burden shift.

To establish a prima facie case of employment discrimination, a plaintiff must show that "(1) she belonged to a protected class; (2) she was qualified for the position she occupied; (3) she was subject to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination." *Menaker v. Hofstra University*, 935 F.3d 20, 30 (2d Cir. 2019). Notwithstanding that Plaintiff's burden at this stage is often described as de minimis, it is not non-existent. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) ("[P]laintiff's claims nevertheless fail if she cannot make out a prima facie case of discrimination.") (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The adverse employment actions at issue are Plaintiff's June 6, 2017 suspension and June 16, 2017 firing. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. For Summ. J., ("Opp."), ECF No. 125, at 5.) For purposes of this motion, Defendants do not dispute that Plaintiff satisfies the first three elements of her claim, but argue she cannot satisfy the fourth because she cannot "establish that Bloomingdale's decision occurred under circumstances giving rise to an inference of pregnancy discrimination . . . ." (Defs.' Mem. at 6.) They claim that the evidence indicates that Plaintiff's termination instead stems from her violations of multiple Bloomingdale's policies, including their employee purchase policy limit, employee discount policy, and policy against violating state and city laws. (*Id.* at 8.)

Plaintiff fails to meet her burden in establishing these adverse employment actions arose under circumstances giving an inference of discrimination. Defendants have set forth significant evidence showing that they had already suspected Plaintiff of violating their discount policy and

engaging in fraudulent activity or improper diversion of their products, and confirmed through Plaintiff's own admission that she participated in tax evasion in violation of company policy.

In February 2017, the Asset Protection department was alerted that Plaintiff had a considerable amount of "send" orders flagged for fraudulent activity, amounting to $67,000 in sales over just five days. (Joint SUMF ¶ 65.) Castellani interviewed Plaintiff on February 4 to discuss her suspicious activity, but decided to not take action; however, Plaintiff was not cleared of wrongdoing. (*Id.* ¶¶ 76–77.) A few weeks later, internal e-mails from April 2017 indicate that a representative from the Asset Protection department suspected that Plaintiff was "violating [Defendants'] diverter policy," and that it was "extremely likely" that Plaintiff was violating Defendants' discount policy. (Becker's Decl., Ex. E at BLM001904.) Then on June 1, Asset Protection received a second notice stating that Plaintiff's suspicious send orders increased to at least $90,000—Plaintiff now had the "highest fraud 'sends' in all of Macy's and Bloomingdale's" for 2017. (*Id.* ¶ 17). Her amount more than tripled the next closest employee. (*Id.*) By the time this information reached Castellani, he had already scheduled a second interview with Plaintiff to discuss other red flags regarding her credit account and/or exceeding Bloomingdale's purchase limits in connection with $65,000 worth of purchases. (*Id.* ¶ 19.) In a June 6 interview with Castellani, Plaintiff admitted to violating company policy by shipping products out of state to purposefully "avoid New York State tax." (Becker's Decl., Ex. F at BLM001894.) Defendants suspended Plaintiff that day, and fired her ten days later. Defendants claim that purposeful tax evasion by mailing merchandise out of state is a terminable offense, and have supported this assertion with evidence that they have terminated every employee who has admitted to such conduct. (Cox Decl. ¶ 37, Ex. L.)

It is difficult to discern what, if any, response Plaintiff has in the face of this evidence. Plaintiff nonetheless appears to argue that she received disparate treatment compared to others who were similarly situated. Specifically, that her and her male colleague, Tyler Rose, shared the same improper conduct, but Defendants fired her, (*see* Opp. at 5 ("[Plaintiff] was terminated for the saeme (sic) reason as Ttyler (sic) Rose a male,")), and that her circumstance and a comparator's lawsuit "involved the same supervisors, similar facts, and that case was resolved." (*Id.*)

To the contrary, Plaintiff's own submission bears evidence that Defendants employed consistent treatment to Plaintiff and Tyler Rose where applicable. Tyler Rose received a suspension in connection with one suspicious purchase he shipped to an out-of-state address. (Mendoza Decl., ECF. No. 131, BLM001576–77.) Plaintiff's investigated conduct involved *25 purchases*, multiple shipments, and an admission of purposeful tax evasion. (Becker Decl. ¶ 22, Ex. G.) Plaintiff acknowledges that she also received a suspension, (Opp. at 3), but her alleged conduct was clearly more egregious, hence her enhanced punishment. Moreover, Tyler Rose did not admit to any purposeful tax evasion. (*See* Mendoza Decl., ECF No. 131, Ex. 10 at BLM001576–77.) Castellani, who interviewed both employees, provided sworn testimony that he did not view termination (on top off Tyler Rose's suspension) as appropriate because Tyler Rose's conduct was not similarly situated to Plaintiff's: "[Plaintiff] had numerous transactions with numerous items sent to numerous locations out of state, whereas Tyler, in my opinion, was just one instance and it wasn't clear to me that there was sufficient information to support terminating him."

As for Plaintiff's reference to a comparator's lawsuit, Plaintiff may not substitute unsubstantiated allegations from a different lawsuit with evidence that she herself suffered discrimination. Particularly so when made in conclusory fashion as she has done here. *See*

*Wellington v. Spencer-Edwards*, 2019 WL 2764078, 2019 U.S. Dist. LEXIS 110568, at *7 (S.D.N.Y. July 1, 2019) (finding no inference of discrimination where the plaintiff cited "conclusory testimony from other teachers stating that [the defendant] favored Black teachers and disfavored white teachers" because this evidence was "not specifically tied to [the p]laintiff."). Indeed, Plaintiff does not even attempt to describe the circumstance of the purported comparator case, let alone compare it to the facts here. Ultimately, Plaintiff has failed to establish a prima facie case vis-à-vis her failure to offer any evidence that her suspension or termination arose under circumstances giving rise to an inference of pregnancy discrimination.[3] Further, because Plaintiff's NYSHRL discrimination claim fails, her Eleventh Cause of Action for aiding and abetting claim necessarily fails and is dismissed.

**B. Discrimination under the NYCHRL**

Plaintiff's Twelfth Cause of Action alleges that Defendants and Defendant Law discriminated against her in violation of the NYCHRL. To establish a discrimination claim under the lesser NYCHRL standard, Plaintiff must show that her employer treated her less well, at least in part for a discriminatory reason. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). The *McDonnell Douglas* burden shift similarly applies to NYCHRL discrimination claims. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)).

Plaintiff has not adduced any evidence that Defendants treated her less well. Plaintiff merely regurgitates her argument related to Defendants' treatment of Tyler Rose and asserts in a conclusory manner (without any citation to the record) that "they replaced [Plaintiff] with male

---

[3] Even assuming that Plaintiff could establish a prima facie case of discrimination, she has not shown that Defendants' legitimate, non-discriminatory reasons for her termination was pretextual. This also applies to Plaintiff's discrimination claim under the NYCHRL, discussed in Section IIIB, *infra*.

and didn't terminate people for doing the same thing she did." (Opp. at 7.) Plaintiff fails to identify any such person who was not fired for similar conduct, nor does she even point to any evidence that a new employee replaced her.

Defendants are therefore entitled to summary judgment on Plaintiff's Twelfth Cause of Action for discrimination under the NYCHRL, and as a result, they are also entitled to summary judgment on Plaintiff's secondary claims under Causes of Action Fourteen and Sixteen for aiding and abetting discrimination and supervisor liability, respectively.

**C. Failure to Accommodate under the ADA and NYCHRL**

Plaintiff's Fourth and Eighteenth Causes of Action allege that Defendants failed to accommodate her disability in further violation of the ADA and the NYCHRL. To establish a prima facie disability discrimination case based on a failure to accommodate under the ADA, the plaintiff must demonstrate that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (internal quotations marks omitted). The same applies to the NYCHRL. *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 419 (S.D.N.Y. 2017).

Defendants argue that Plaintiff cannot establish the final element of her claim, i.e., that Defendants refused to make an accommodation. To sum up what appears to be Plaintiff's response in her Opposition, Plaintiff claims that an incorrect set of elements from the Third Circuit apply here and that Defendants are precluded from summary judgment because "defendants did not have (sic) engage in faith (sic) in interactive process nor did they provide her with reaonsbale (sic)

accommodation," and they "did not explain undue hardship (sic) summary judget (sic) cannot be granted on this claim." (Opp. at 6–7.) Plaintiff has not identified any accommodation Defendants refused to make, which is fatal to her claim as she again fails to make a prima facie case. Defendants are entitled to summary judgment on Plaintiff's Fourth and Eighteenth Causes of Action.

**D. Plaintiff's Seventeenth Cause of Action**

Plaintiff's Seventeenth Cause of Action alleges discrimination under Section 8-107(1)(a) of the NYCHRL. This is duplicative of Cause of Action Twelve and is therefore dismissed. *Xiang v. Eagle Enters., LLC*, 2020 WL 248941, 2020 U.S. Dist. LEXIS 7909, at *32–33 (S.D.N.Y. Jan. 16, 2020).

## IV. CONCLUSION

Defendants' motions for summary judgment, (ECF No. 104), is GRANTED. The claims against all defendants are dismissed. The Clerk of Court is hereby ordered to close the open motion, and dismiss all defendants from this action.

Dated: November 13, 2023
New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge